UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

ISIDORO RODRIGUEZ, ESQ.                    :
                                           :
                              Plaintiff,   : CASE NO. 07-CV-_____
                                           :
                    v.                     :
                                           : (ORAL ARGUMENT REQUESTED;
LEGAL TIMES, *et al.,*                      : EXPEDITED CONSIDERATION
                                           : REQUESTED BY MAY 31, 2007)
                              Defendants.   :
_____:

PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER
AND A PRELIMINARY INJUNCTION

Pursuant to 28 U.S.C.§ 1331, Fed. R. Civ. P. 65, and the holding of the United States

Supreme Court in *Supreme Court of Virginia et al, v. Consumers Union of the United States, Inc., et*

*al.,* 446 U.S. 719, 100 S.Ct. 1967, 64 L.ed.2d 641 (1980), and *D.C. Court of Appeals v. Feldman*, 460

U.S. 462, 483-485 (1983), Plaintiffs Isidoro Rodriguez, Esq. ("Rodriguez-father"):

First, moves for the issuance of a Temporary Restraining Order, until Rodriguez-father's

motion for a preliminary injunction can be heard:

A.    Enjoining the *void* procedure of Defendant Virginia State Bar ("VSB") Disciplinary System

under Part 6, § IV, ¶ 13 of the Rules of the Virginia Supreme Court (Exhibit 1), which

disregard the restrictions under Art. VI § 1 and § 5 of the Constitution of Virginia, and the

mandates of the General Assembly of Virginia under VA Code §§ 54.1-3909, 54.1-3910, 54.1-

3915, and 54.1-3935, thereby depriving Rodriguez-father of his right to due process and

equal protection of the laws pursuant to the 5th and 14th Amend. of the U.S. Constitution;

B.    Enjoining the *void* order of Defendant VSB of November 27, 2006 (Exhibits 3 and 4), issued

in violation of 18 U.S.C. §§ 241, 242, and 1204, by injuring Rodriguez-father right to

employment (Exhibit 5) for his taking "actions" to enforce his parental rights under Treaty,

federal statute, and Va. Code, and to  protect his property rights in his perfected Virginia

Attorney's Lien from a business conspiracy;

C.       Enjoining the Defendant Virginia Supreme Court's recently scheduled *void* appeal hearing

for June 5, 2007, at 0900 hrs, Richmond, Virginia (Exhibit 6);

D.       Enjoining the Defendant Committee on Admissions of the D. C. Court of Appeals refusal to

comply with DC Ct. App. Rule 46, based on the VSB *void* order (Exhibit 7);

E.       Enjoining the Defendants *Legal Times* and *Washington Post*, posting on the World Wide Net

or publishing false, misleading, and defamatory news articles.

Second, moves for a preliminary injunction enjoining Defendants from implementing,

enforcing, applying or otherwise giving legal effect to the *void* order of Defendant VSB issued on

November 27, 2006 (Exhibit 3 and 4) pending final resolution of this matter on the merits.

Given the Defendants on going criminal violations of 18 U.S.C. §§ 4, 242, 242, 371, 1001,

and 1203, expedited consideration is requested. The motions are based on Rodriguez-father's

Complaint, Memorandum in Support of Motion for Temporary Restraining Order and Preliminary

Injunction, and affidavit.  These facts demonstrate that the enforcement and operation of the VSB

*void* procedure under current Part 6, § IV, ¶ 13 of the Rules of the Virginia Supreme Court (Exhibit

1), are in violation of Article I § 11 of the Constitution of Virginia under Art. VI § 1 and § 5 of the

Constitution of Virginia, and the mandates of the General Assembly of Virginia enacted in VA Code

§§ 54.1-3909, 54.1-3910, 54.1-3915, and 54.1-3935; that as a direct and proximate result of

Defendants' current and future enforcement of the VSB  *void* order issued violates the First, Fifth,

and Fourteenth Amendments to the United States Constitution, Rodriguez-father is suffering public

stigma and shame, damage to his business, profession and employment (Exhibit 5), will continue

to suffer which would be preventable by an injunction; that based on the record of the conspiracy

to injure him, Rodriguez-father has no adequate remedy at law; that an injunction would permit him

to employment as an attorney pending a final determination; that the threatened and real injury to the Rodriguez-father outweighs whatever damage, if any, the proposed injunction would cause the Defendants; that the proposed injunction would not be adverse to the public interest; and given the record of the intentional violations of the statutes of Congress and General Assembly of Virginia Rodriguez-father have a substantial likelihood of success on the merits.

Rodriguez-father request that the Court set no bond as security for any injunction, because the trial court may, "in the exercise of discretion," determine a bond is unnecessary to secure an injunction under Fed. R. Civ. P. 65 "in the absence of proof showing a likelihood of harm." *Coquina Oil Corp. v. Transwestern Pipeline Co.*, 825 F.2d 1461, 1462 (10th Cir. 1987); *see also* 11A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure sec. 2954 (2d. ed. 1987).  In the present case, it is difficult to conceive of any harm that would befall the defendants should an injunction be wrongfully granted.

A certification of service  is attached to this Motion confirming notice to defendants by Rodriguez-father in compliance with Local Rules 65.1.

DATED this 24th day of May 2007.

Respectfully submitted,

_____
Isidoro Rodriguez, Esq.

THE LAW OFFICES OF ISIDORO RODRIGUEZ
ATTORNEYS AND COUNSELORS AT LAW

*United States Office:*
2304 Farrington Avenue
Alexandria, Virginia 22303-1520
Telephones: 703.317.0526; Fax: 703.960.0225
Cell: 703.470.1457
Email: isidoror@earthlink.net

*South American Office:*
World Trade Center-Barranquilla
Calle 76 No. 54-11, Office 313
Barranquilla, Colombia, SA
Telephone: 011.5753.605288

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                 :
ISIDORO RODRIGUEZ, ESQ.                           :
                                                 :
                        Plaintiff,                : CASE NO. 07-CV-_____
                                                 :
            v.                                    :
                                                 :
LEGAL TIMES, *et al.,*                            :
                                                 :
                        Defendants.               :
_____:

## PLAINTIFF'S MEMORANDUM IN OF MOTION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

Based on the record that to date neither has there been, nor could there be any valid judicial action by any "court" of Virginia, this Court has jurisdiction pursuant to 28 U.S.C.§ 1331, to grant Plaintiff Isidoro Rodriguez's ("Rodriguez-father") motion for the TRO/Preliminary Injunction to enjoin the on going deprivation of Rodriguez-father's his right to due process and equal protection of the laws pursuant to the 1st, 5th and 14th Amend. of the U.S. Constitution, *See Supreme Court of Virginia et al, v. Consumers Union of the United States, Inc., et al.,* 446 U.S. 719, 100 S.Ct. 1967, 64 L.ed.2d 641 (1980), *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 483-485 (1983)(*see* Dissent of Associate Paul Stevens, 488), because:

First, both the Virginia State Bar ("VSB") Disciplinary System established by the VSB amending in November 2003, Part 6, § IV, ¶ 13 of the Rules of the Virginia Supreme Court (attached as Exhibit 1) and the VSB order issued on November 28, 2006 (attached as Exhibit 3 and 4),[1] are

_____

[1]As discussed in detail below, the *void* order and judgement doctrine, states that an illegal order or judgement is forever *void ab initio*, thus null from the beginning. "A *void* judgment is one that has been procured by extrinsic or collateral fraud, or entered by a court that did not have jurisdiction over the subject matter or the parties." *Rook v. Rook,* 233 Va. 92, 353 S.E.2d 756, 758 (1987) (citations omitted)(Emphases added).

*void* because of the Defendant VSB and Defendant Supreme Court of Virginia intentional disregarded the restrictions placed on them under Art. VI § 1 and § 5 of the Constitution of Virginia, and the mandates of the General Assembly of Virginia under VA Code §§ 54.1-3909, 54.1-3910, 54.1-3915, and 54.1-3935; and,

Second, the past and on going conspiracy to injure, stigmatize and punish Rodriguez-father for exercising his statutory rights violate the protections of 18 U.S.C. §§ 241 and 242, and VA Code §§ 54.1-3915.

In summary, the record of both the ongoing civil and criminal violations in the proceedings below confirms that ultimately, no law serves our citizens well--if our judges are unwilling to respect and enforce the law by conspiring with the Executive Branch to deprive the people of Constitutional and statutory rights enacted by Congress and the General Assembly of Virginia.

This is because the Judicial branch of government is charged with the duties of maintaining justice. The court system is supposed to work for the people. That is how the Constitution defines the role of the justice system. The Constitution, and statutes enacted by Congress and the General Assembly of Virginia define things the courts cannot do, as well as things it must do.

The language of another Virginian, Chief Justice Marshall in *Cohens v. Virginia*, 6 Wheat, 264, 404 (1816), is most apposite on this, where he states that:

> It is most true that this court will not take jurisdiction if it should not; but it is equally true that it must take jurisdiction if it should. The judiciary cannot, as the legislature may, avoid a measure because it approaches the confines of the Constitution. We cannot pass it by because it is doubtful. With whatever doubts, with whatever difficulties, a case may be attended, we must decide it, if it be brought before us. We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution. Questions may occur which we would gladly avoid, but we cannot avoid them. All we can do is to exercise our best judgement, and conscientiously perform our duty. (Emphasis added).

<u>CONSTITUTION OF VIRGINIA INVOLVED</u>

Article VI, Section 1. Judicial power; jurisdiction. — The judicial power of the Common-

wealth shall be vested in a Supreme Court and in such other courts of original or appellate jurisdiction subordinate to the Supreme Court as the General Assembly may from time to time establish.

SECTIONS OF THE VIRGINIA CODE INVOLVED

VA Code § 54.1-3915. Restrictions as to rules and regulations.

    Not withstanding the foregoing provisions of this article, the Supreme Court shall not promulgate rules or regulations prescribing a code of ethics governing the professional conduct of attorneys which are inconsistent with any statute; nor shall it promulgate any rule or regulation or method of procedure which eliminates the jurisdiction of the courts to deal with the discipline of attorneys. In no case shall an attorney who demands to be tried by a court of competent jurisdiction for the violation of any rule or regulation adopted under this article be tried in any other manner.

Virginia Code § 54.1-3935. Procedure for revocation of license.

    A. If the Supreme Court, the Court of Appeals, or any circuit court of this Commonwealth observes, or if a complaint, verified by affidavit is made by any person to such court, that any attorney has . . . violated the Virginia Code of Professional Responsibility, the court may assign the matter to the Virginia State Bar for investigation. Upon receipt of the report of the Virginia State Bar, the court may issue a rule against such attorney to show cause why his license to practice law shall not be revoked. If the complaint, verified by affidavit, is made by a district committee of the Virginia State Bar, the court shall issue a rule against the attorney to show cause why his license to practice law shall not be revoked.

STATEMENT OF FACTS

    Beginning in 2003 to the present, both the Defendants *Legal Times* and the *Washington Post*, published and posted on the World Wide Web articles at the behest of the Defendant National Center for Missing and Exploited Children aimed at misleading the public and stigmatizing Rodriguez-father, and have cause him to lose employment in the District of Colombia, and Richmond, Va.

    Based on two fraudulent unverified by affidavit VSB Complaints filed with the VSB respectively in October 2003 and January 2004, by Defendants in retaliation for Rodriguez-father's actively litigating in *Isidoro Rodriguez, Esq., and Isidoro Rodriguez-Hazbun v. National Center for Missing and Exploited Children,* D.C. Dist Ct. No. 03-0120 (Roberts, J.), to enforce his statutory and Treaty rights as a father, and statutory right to enforce and protect his perfected charging Virginia Attorney's Lien from a business conspiracy by obtaining a default judgment in *Isidoro Rodriguez, Esq. V. Danilo Devis Pereira*, Fairfax County Ct No. 215327, Rodriguez-father has been and is the subject

Page 3

of illegal intense investigation by the VSB in violation of VA Code § 54.1-3915 and § 54.1-3935, as well as 18 U.S.C. §§ 241 and 242.

A month after the filing of the VSB Complaint against Rodriguez-father, on November 6, 2003, as agents of the Supreme Court of Virginia the VSB unlawfully promulgated procedural rules giving them authority to discipline attorneys, including permitting the revoking of a license and disbarment (attached as Exhibit 1).

On June 20, 2006, the Fifth District Subcommittee of the VSB, without any hearing, issued a summary Certification to disbar or revoke Rodriguez's license for his litigating to enforce his statutory and Treaty rights.

Because of the clear violations of Article I § 5 of the Constitution of Virginia VA Code §§ 54.1-3915 and 3935, as well as Part 6, § IV, ¶ 13(B)(5)(A) and (b)(5)(1), and Part 6, § IV, ¶13(C)(5)(a) and (G)(1)(a)(1) and (5) of the Rules of the Virginia Supreme Court, Rodriguez-father filed and appeal to the VSB to challenge by Pre-Hearing Motion to Dismiss the Certification and the VSB Proceedings for lack of jurisdiction because the current VSB's procedures were inconsistent and in the noncompliance with Rodriguez-father statutory rights as a father, and property right in his perfected statutory Virginia Attorney's Lien.

Surreally, without addressing the merits of the violation of VA Code § 54.1-3915, the VSB issued orders denying the motions to dismiss, the motion for expedited hearing, motions for a jury trial, and the motions for recusal of the panel from Northern Virginia. Later in preparation for the hearing before the VSB, Rodriguez-father's request for Subpoenas *Duces Tecum*, and request for Witness Subpoenas issued outside and inside of the Commonwealth of Virginia, were quashed.

Thus, prior to the hearing Rodriguez-father filed with the Supreme Court of Virginia on September 27, 2006, a Motion for TRO/Preliminary and Writ of Mandamus, seeking to enjoin the VSB's *void* proceeding conducted in furtherance of the conspiracy to deprive Rodriguez-father of his

statutory rights under VA Code, Federal Statute, and Treaty in violation of VA Code § 54.1-3915. Since the VSB was neither a "court" nor its members "judges," the VSB proceeding and orders were issued in violation of Art. VI §1 and § 5 of the VA Constitution, VA Code §§ 54.1-3935, as well as Part 6, § IV, ¶ 13(B)(5)(A) and (b)(5)(1), and Part 6, § IV, ¶13(C)(5)(a) and (G)(1)(a)(1) and (5) of the Rules of the Virginia Supreme Court.

Again on October 26 and 27, 2006, Rodriguez-father objected to the VSB proceedings based on lack of jurisdiction.  Mr. J. Leroy Banks of the VSB denied the oral motion.

During the hearing the VSB denied Rodriguez-father the right of cross examination the VSB's witness Defendants Patrick H. Stiehm, Susan Brinkerhoff, and Nancy Hammer on the violations of Rodriguez-father's under Virginia's UCCJEA, the Treaty, and ICARA, by histrionically holding that this line of cross examination was an attempt to again litigate issues previously decided by the courts.  Also in violation of 18 U.S.C. § 1204, the VSB permitted its witness to commit perjury and obstruct Rodriguez-father's statutory parental rights under Va. Code, Treaty, and the controlling precedent of *Sarah Claudia Aragon Canter vs. Andrew Cohen*, 442 F.3d 196 (4TH Cir., 2006).

On October 27, 2006, the Defendant Supreme Court of Virginia served their order denying as "frivolous" the motion for TRO, Preliminary Injunction and Writ of Mandamus, and imposed cost on Rodriguez-father of $50.00(attached Exhibit 2).  On the same date, the VSB issued a "Summary Order" immediately revoking Rodriguez-father license to practice law in the Commonwealth of Virginia, and a "Memorandum Order" on November 28, 2006 (attached Exhibit 3 and 4).

The VSB on October 27, 2006, immediately published on the World Wide Web their *invalid* and *void* order stigmatizing him as not in good standing and revoking Rodriguez-father's license at www.vsb.org.html (attached Exhibit 4), denying Rodriguez-father access to his paid for membership benefits, including access to legal research, and refused to have posted his paid for MCLE credits earned for 2006.

Rodriguez-father filed an appeal, Opening Brief and Reply Brief challenging the violations of Art. VI § 1 and § 5 the VA Constitution, VA Code §§ 54.1-3915 and 3935, as well as Part 6, § IV, ¶ 13(B)(5)(A) and (b)(5)(1), and Part 6, § IV, ¶13(C)(5)(a) and (G)(1)(a)(1) and (5) of the Rules of the Virginia Supreme Court by the issuance of the *void* order to punish him for exercising his statutory rights.

On April 17, 2007, Defendants Attorney General of the Commonwealth of Virginia and Catherine Hill, filed Response Brief in which she surreally disregarded the fact that the VSB was not established by the General Assembly of Virginia as a "court," only was delegated authority limited authority to investigate and prosecute complaints for violations of the Rules of the Supreme Court of Virginia which were not inconsistent with statutory rights, and the VSB had no judicial authority under the Constitution of Virginia and Va. Code to revoke Rodriguez-father license to practice law as punishment for exercising his Federal statutory rights, and rights under the Treaty and Va. Code.[2]

Irrespective of the obvious lack of transparency and impartiality in reviewing the illegal acts of the VSB authorized by them, the fact that the *void* order makes the appeal to the Defendant Supreme Court of Virginia impossible due to the violation of VA Code §§ 3935, and despite obvious ongoing conspiracy in violations of 18 U.S.C. §§ 4, 241, 242, 1001, and 1204, the Defendant Supreme Court of Virginia sent on May 18, 2007, notice of the scheduling of oral argument for June 5, 2007 (attach Exhibit 6).

Also on May 18, 2007, the Defendant Committee on Admission for the District of Columbia Court of Appeals gave notice that it was approving and ratifying the VSB *void* order and actions in the District of Columbia to stigmatized and illegally stop Rodriguez-father's waiver application for

---

[2]Defendant Hill present the  weird argument that  Rodriguez-father has not deprived of his statutory rights because he still could litigate those issues despite the  *void* order revoking his license for litigating to enforce statutory right.

Page 6

admission into the Bar of the District of Columbia that was filed on July 21, 2005, based on being a member in good standing since 1982 of the Bar of the Supreme Court of Virginia, and that they were ignoring his repeated request for a public hearing pursuant to DC Ct. App. Rule 46 (attached Exhibit 7). Consequently, based on the VSB *void* order Rodriguez-father has been stigmatized and denied since October 27, 2006–for more than seven months--his property right in his business, profession, and to employment in the District of Columbia (attached Exhibit 5).

ARGUMENT--REASONS FOR GRANTING THE ISSUANCE OF THE TRO AND INJUNCTION

To prevail Rodriguez-father must establish the following prerequisites in order to receive a TRO/Injunction under equitable principles. *Capital Tool & Mfg. Co. V. Maschinenfabrik Herkules*, 837 F.2d 171 (4th Cir. 1988): (1) that there is a substantial likelihood that he will ultimately prevail on the merits; (2) that he will suffer irreparable injury unless the injunction issues; (3) that the threatened injuries to him outweigh whatever damage the proposed injunction may cause to the opposing parties; and, (4) that the injunction, if issued, would not be adverse to the public interest. *Blackwelder Furniture Co. v. Seilig Mfg. Co.,* 550 F. 2d 189 (4th Cir. 1977).

Additionally, to the above, Rodriguez-father must show a lack of an adequate remedy at law, which is closely associated with irreparable harm. *Seniors Coalitions v. Senior Foundation*, 19 Cir. C143649, 39 Va. Cir. 344 (*quoting Wright v. Curtis*, 232 Va 218, 349 S.E.2d 125 (1986).

I.    BASED ON VIOLATION OF VA CODE §§ 18.2-499 & 500, 54.1-3932 AND 54.1-3935, PURSUANT TO THE *VOID ORDER DOCTRINE* RODRIGUEZ-FATHER WILL ULTIMATELY PREVAIL UPON THE MERITS.

<u>VSB IS WITHOUT STATUTORY AUTHORITY TO REVOKE RODRIGUEZ'S LICENSE</u>

Pursuant to the basic rules of statutory construction, Article VI § 1 and § 5 of the Constitution of Virginia, as well as VA Code §§ 54.1-3909, 54.1-3910, 54.1-3915, and 54.1-3935, must be reviewed in their entirety to determine the intent from the plain and natural meaning of the words used in these statutes. *West Lewinsville Heights Citizens Ass'n v. Board of Supervisors*, 270 Va. 259,

265, 618 S.E.2d 311, 314 (2005); *Capelle v. Orange County*, 269 Va. 60, 65, 607 S.E.2d 103, 105 (2005).

The General Assembly of the Commonwealth of Virginia in enacting Va. Code § 54.1-3909, delegated to the Supreme Court of Virginia ("Court"), the authority to promulgate rules and regulations organizing and governing the VSB (attached as Exhibit 1),[3] but restricted the Court to granting the VSB only authority to act as its administrative agency of the Court with the power only to investigate and report violations of rules and regulations of the Court.[4] Thus the Gen Assembly did not authorize either for the VSB to promulgate regulations now in effect (attach Exhibit 1),[5] or even "quasi-judicial power."[6]

Because VA Code §§ 54.1-3909 & 54.1-3910 address the role of the VSB in a general manner, and VA Code §§ 54.1-3915 & 54.1-3935, in a more specific manner, statutory construction mandates

---

[3]Va. Code § 54.1-3909, in relevant part states that the Supreme Court may promulgate rules and regulations defining the practice of law, "[p]rescribing a code of ethics governing the professional conduct of attorneys including the practice of law . . . ," and "[p]rescribing procedures for disciplining, suspending, and disbarring attorneys." However, when the Gen. Assembly has used words as here of a definite import that limited the authority of the VSB, the Court cannot give those words a construction that amounts to holding that the Gen. Assembly meant something else. *Mozley v. Prestwould Bd. of Dirs.*, 264 Va. 549, 554, 570 S.E.2d 817, 820 (2002).

[4]Part 6, § IV, ¶13(B)(5)(a) of the Rules of the Virginia Supreme Court, states: "[t]he Board shall have jurisdiction to consider: . . . . (5) Revocation or Suspension in another jurisdiction; . . . ." (Emphasis added) Thus the Court, not only could not, but in fact did not give the VSB jurisdiction to revoke a license.

[5]When the Gen. Assembly delegated authority to the Court to promulgate regulations, the regulations must neither exceed the scope of the authority delegated nor be inconsistent with it. *Ames v. Town of Painter*, 239 Va. 343, 349, 389 S.E.2d 702, 705 (1990). Correspondingly, the regulations must also contain "definite standards to guide . . . the exercise of the power." Ames, 239 Va. at 349, 389 S.E.2d at 705.

[6]"Quasi-judicial power," is defined as, "[a]n administrative agency's power to adjudicate the rights of those who appear before it." Bryan A. Garner, Black's Law Dictionary, at page 1208 (8th ed. 1999). *See also* Administrative Law and Procedures, key 108. C.J.S. *Public Administrative Law and Procedures* §§ 10-11.

that the latter statutes prevail over the former. *Capelle v. Orange County*, 269 Va. 60, 65, 607 S.E.2d 103, 105 (2005); *Frederick County Sch. Bd. v. Hannah*, 267 Va. 231, 236, 590 S.E.2d 567, 569 (2004); *County of Fairfax v. Century Concrete Servs.*, 254 Va. 423, 427, 492 S.E.2d 648, 650 (1997).

In VA Code § 54.1-3915, the Gen. Assembly placed three specific restrictions on the Court's power to issue rules and regulations:

• first, the Court is not permitted to "promulgate rules or regulations prescribing a code of ethics governing the professional conduct of attorneys which are inconsistent with any statute";[7]

• second, the Court is not permitted to, "promulgate any rule or regulation or method of procedure which eliminates the jurisdiction of the courts to deal with the discipline of attorneys"; and,

• third, the Court is not permitted to promulgate any rule which would deprive an "attorney who demands to be tried by a court of competent jurisdiction for the violation of any rule or regulation adopted under this article be tried in any other manner."

In reviewing the issue, dealing with unambiguous the statutory language this court is bound by the plain meaning of that language. *Williams v. Commonwealth*, 265 Va. 268, 271, 576 S.E.2d 468, 470 (2003); *Woods v. Mendez*, 265 Va. 68, 74-75, 574 S.E.2d 263, 266 (2003); *Earley v. Landsidle*, 257 Va. 365, 370, 514 S.E.2d 153, 155 (1999).[8]

---

[7]Part 6, § IV, ¶ 13 (G)(1)(a)(1) and (5) of the Rules of the Virginia Supreme Court, states, "Dismiss the Complaint when:(1)as a matter of law, the conduct questioned or alleged does not constitute Misconduct;. . . (5) the action alleged to be Misconduct is protected by superseding law." (Emphasis added) Thus, the VSB acted in intentional violation of their delegated authority conducting proceeding and issued orders revoking Rodriguez-father's license to practice law because he has litigated pursuant to statutory and Treaty rights to seek access to an impartial court to prevent the obstruction of his rights as a father, and to secure the enforcement and protection from a business conspiracy of his perfected charging Virginia Attorney's Lien.

[8]Article I, §7, Constitution of Virginia, state, "Laws should not be suspended. That all power of suspending laws, or the execution of laws, by any authority, without consent of the representatives of the people, is injurious to their rights, and our not to be exercised."

It is clear that the Gen. Assembly neither authorized the VSB to act as a  "court," nor did it authorized the VSB Disciplinary Board members to act like a "judge."[9]

Specifically as to the authority and procedure to revoke a license, the Gen. Assembly, enacted VA Code § 54.1-3935, to authorize only a "court" to conduct a hearing after the filing of a complaint, verified by affidavit, and if found guilty by a "court," only gave to the "court" the power to revoke or suspend his license.[10] *See Ex parte Fisher*, 6 Leigh [33 Va.] 619, *Legal Club of Lynchburg v. Light*, 119 S.E. 55 (Va. 1923).

As explained by the Supreme Court of Virginia in *Norfolk Bar Ass'n v. Drewey*, 161 Va. 833 at 837, 171 S.E. 282 (1934), "[t]he power to discipline is judicial in nature"(citation omitted).

Thus the VSB proceedings and order revoking Rodriguez-father's license to practice law are *void ad initio*, not just *voidable.*[11]

This is because a *void judgment* is not entitled to the respect accorded a valid adjudication,

---

[9]"Judicial power," is defined as, "[t]he authority vested in courts and judges to hear and decide cases and make binding judgements on them; . . . . " Bryan A. Garner, <u>Black's Law Dictionary</u>, at  864 (8th ed. 1999).

[10]Va. Const. Art. VI, § 1, establishes judicial power of Virginia in the Court, and such other courts as <u>only</u> the Gen. Assembly  may establish by statute.  Not only did the General Assembly not create the VSB as a "court," but more importantly, it is fundamental to independence, impartiality and integrity of the judiciary for a judge to exercise the powers of office without undue or unauthorized reliance upon non-judges, thus the Court cannot delegate its judicial power to the VSB. Furthermore, Rodriguez-father's challenge to the VSB violations of Va. Code do not give the VSB judicial authority which does not existed in law.  Rodriguez-father never waived his objection to the fact that the VSB investigated, prosecuted, and sat as the deciding body in violation of the basic concept of separation of power, so to issue a *void order.*  As noted in *Quarles v. Miller*, 86 F.3d 55 (4th Cir. 1996), in the 4th Cir., and specifically in Virginia it is well established that "[i]n the absence of fraud, accident or surprise, a judgment, when entered and no appeal taken, is conclusive, even though the judgment is manifestly wrong in law or fact." *Carpenter v. Ingram,* 152 Va. 27, 146 S.E. 193, 195 (1929) (Emphasis added).

[11]"Voidable judgement" is defined as, "[a] judgement that, although seeming valid, is defective in some material way; esp., a judgment that, although rendered by a court having jurisdiction, is irregular or erroneous. Bryan A. Garner, <u>Black's Law Dictionary</u>, at page 861 (8[th] ed. 1999).  *See also* Judgements, key 27 353, 501. C.J.S. *Judgments* §§ 308, 526, 546, 549.

but may be entirely disregarded, or declared inoperative by any tribunal in which effect is sought to be given to it. It is attended by none of the consequences of a valid adjudication. It has no legal or binding force or efficacy for any purpose or at any place. ... It is not entitled to enforcement ... All proceedings founded on the void judgment are themselves regarded as invalid. *Hanson v Denckla*, 357 US 235, 2 L Ed 2d 1283, 78 S Ct 1228; 30A Am Jur. Judgments §§ 44, 45.[12]

Finally, because the VSB acted outside of its ministerial capacity and jurisdiction, as agents of the Supreme Court of Virginia, they are subject to the Virginia Tort Claim filed on June 8, 2005, and the statute of limitation is tolled by their on going unlawful actions in furtherance of the conspiracy in violation of 18 U.S.C. §§ 4, 241, 1001, AND 1204.

Furthermore Article VI § 5 of the Constitution, and the General Assembly of Virginia in VA Code §§ 54.1-3915, specifically restricted the Supreme Court of Virginia from promulgating any rule which violates any statute rights given an attorney.

Pursuant to "the well recognize rule of construction that if a rule of the Supreme Court [of Virginia] is at variance with a statutory enactment, the terms of the statute must prevail."1996 Va. AG 23, at page 2 (Emphasis added). Consequently, the Supreme Court of Virginia cannot expand the authority of the VSB beyond that which was given by the General Assembly of Virginia.[13]

Because the current procedure followed by the VSB violates the "plain language" of both the

---

[12]The orders of the VSB are *void* not only because they are not a "court," but too because they are not judges--and only judges can make judgements and orders. In the case of *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351, 20 L. Ed. 646 (1871), the U.S. Supreme Court gave the example that, "If a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action." The case of *Malina v. Gonzales*, 1 F.3d 304 (5th Cir. 08/26/1993) stated, "The jurisdiction prong for judicial immunity requires that judges possess the authority to perform actions relating to a matter before them."

[13]Furthermore, pursuant to Part 6, § IV, ¶ 13(B)(5)(A)of the Rules of the Virginia Supreme Court, the VSB was delegated no authority to revoke the license of a member of the Virginia State.

Article VI § 1 and § 5 Constitution of Virginia, and VA Code § 54.1-3935,[14] the VSB Order was issued outside of their jurisdiction, and is *void*.

The Supreme Court of Virginia only give the limited delegated authority to the VSB to consider, "<u>(5) Revocation or Suspension in another jurisdiction</u>"; (Emphasis Added), and to issue interim Suspension under specific circumstances–none of which exist here. Thus, again the VSB Order is *void*.[15]

As noted above, an illegal order or judgement is forever *void ab initio*, in short null from the beginning of being issued. An order or judgment exceeding either the jurisdiction of a court, or logically issued by an entity without judicial authority, is *void ab initio*, or voidable, and can be attacked in any proceeding in any court where the validity comes into issue. *See Rose v. Himley*, 4 Cranch 241, 2 Led 608 (1808); *Pennoyer v. Neff,* 95 US 714 (1877); *Thompson v. Whitman* 18 Wall 457 (1873); *Windsor v. McVeigh* 93 U.S. 274 (1876); *McDonald v. Mabee*, 243 U.S. 90 (1917), and, *Jordon v. Gilligan*, 500 F.2d 701, 710 (6th Cir. 1974)("<u>a void judgment is no judgment at all and is without legal effect</u>")(Emphases added).

Therefore, it is also obvious that an order or judgement of Defendant Supreme Court of

---

[14]Statutory interpretation is a "pure question of law subject " *Virginia Polytechnic Inst. & State Univ. v. Interactive Return Serv.*, 271 Va. 304, 309, 626 S.E.2d 436, 438 (2006) (citing *Ainslie v. Inman*, 265 Va. 347, 352, 577 S.E.2d 246, 248 (2003)). The Court's function is to "ascertain and give effect to the intention of the legislature," which is usually self-evident from the statutory language. Id. (quoting *Chase v. Daimler Chrysler Corp.*, 266 Va. 544, 547, 587 S.E.2d 521, 522 (2003)). When the statutory language is "clear and unambiguous," the Court must apply "the statute according to its plain language." Id. (citing *HCA Health Servs. v. Levin*, 260 Va. 215, 220, 530 S.E.2d 417, 419-20 (2000)).

[15]"Void judgement" is defined as, "[a] judgement that has no legal force or effect, the invalidity of which may be asserted by any party whose rights are affected at any time and any place, whether directly or collaterally. • From its inception, a void judgement continues to be absolutely null. It is incapable of being confirmed, ratified, or enforced in any manner or to any degree. (Emphasis added) Bryan A. Garner, <u>Black's Law Dictionary</u>, at page 861 (8th ed. 1999). *See also* Federal Civil Procedures key 2392; Judgements, key 5-27, 346, 486. . C.J.S. *Judgments* §§ 4-5, 13-28, 30, 43-46, 48, 73, 75, 82, 201, 203-205, 207, 307, 403, 499, 512, 546, 548-549.

Virginia may not now be rendered without doing violation of both Va., Code, and the constitutional protections, including required <u>due process</u>, *Earle v. McVeigh*, 91 U.S. 503 (1876).

Furthermore, the *VSB* proceedings and orders are *void ad initio* because the record establish that in violation of 18 U.S.C. §§ 4,[16] and 241,the VSB intentionally participated in the on going conspiracy, which has its common purpose to unlawfully, maliciously, intentionally, and/or negligently retaliate, stigmatize. injure, punish, and intimidate Rodriguez-father for his litigating against the obstruction of his parental rights under the Treaty, Federal statutes, and Va. Code, his petitioning Congress and the General Assembly of Virginia for an investigation for the obstruction with his rights as a father,[17] for his litigating to enforce and protect his perfected statutory property in his charging Virginia Attorney's Lien, and for his filing three Federal Tort Claim Notices ("FTCA"), two Virginia Tort Claim Notice ("VTCA"), and both a civil and criminal complaint against the courts of Virginia for violation of 18 U.S.C. §§ 4, 241, 1001, and 1204, by the obstruction of Rodriguez-father's parental rights including to visitation, which were to be secured by the Courts of Virginia pursuant to VA Code § 20-146.1 *et seq.*, the Uniform Child Custody Jurisdiction and Enforcement Act, the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980; 42 U.S.C. § 11601 *et seq.*, the International Child Abduction Remedies Act; Congressional Joint

---

[16]The Federal crime reporting statute (18 U.S.C. § 4), requires anyone who knows of a federal crime to report it to a federal judge or other federal officer, who are required to receive and act on the information under his or her administrative duties.

[17]In *McDonald v. Smith*, 472 U.S. 479, 486 (1985), the U.S. Supreme Court recognized that the right to petition the Government requires stringent protection. "The very idea of a government, republican in form, implies a right on the part of its citizens to meet peaceably for consultation in respect to public affairs and to petition for a redress of grievances." *United States v. Cruikshank*, 2 Otto 542, 92 U.S. 542, 552, 23 L.Ed. 588 (1876). The right to petition is "among the most precious of the liberties guaranteed by the Bill of Rights," *Mine Workers v. Illinois Bar Assn.*, 389 U.S. 217, 222, 88 S.Ct. 353, 356, 19 L.Ed.2d 426 (1967), and except in the most extreme circumstances citizens cannot be punished for exercising this right "without violating those fundamental principles of liberty and justice which lie at the base of all civil and political institutions," *De Jonge v. Oregon*, 299 U.S. 353, 364, 57 S.Ct. 255, 260, 81 L.Ed. 278 (1937).

Concurrent Resolution 293 of May 23, 2000.

II.    Rodriguez-father will continue to suffer irreparable injury unless the injunction is issued.

The second prerequisite for entry of a TRO/Injunction is the "irreparable injury" which Rodriguez-father's business, profession, and right to employment has already and will continue to suffer by the stigma of the *void* order.

A.    The VSB *void order* revoking Rodriguez-father's license to practice law since October 27, 2006, has stigmatized and deprived Rodriguez-father of due process, procedural, due process, and equal protection of the laws.[18]

Due Process, has been generally defined as,[19]

The conduct of legal proceedings according to established rules and principles for the protection and enforcement of private rights, including notice and the right to a fair hearing before a tribunal with the power to decide the case. Bryan A. Garner, Black's Law Dictionary, at page 538 (8th ed. 1999).[20] (Emphasis added)

The limitations inherent in the requirements of due process and equal protection of the law extend to judicial as well as political branches of government, so that a judgment may not be rendered in violation of those constitutional limitations and guarantees.

Where "[t]he appraisal of [an attorney's] conduct is one about which reasonable men differ,

---

[18] The Fifth Amendment of the United States Constitution provides: No person shall . . . be deprived of . . . property, without due process of law; . . . .; and The Due Process Clause of Section 1 of the Fourteenth Amendment to the United States Constitution provides: No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

[19] The words 'due process' have a precise technical import, and are only applicable to the process and proceedings of the courts of justice, . . . , Alexander Hamilton, Remarks on an Act for Regulatory Elections, New York Assembly, 6 Feb. 1787, in 4 *Papers of Alexandria Hamilton* 34, 35 (Harold C. Syrett ed., 1962).

[20] "Power," is defined as, "[t]he legal right or authorization to act or not act; a person's or organization's ability to alter by act or will, the right, duties, liabilities, or other legal relations either of that person ir if an other." Bryan A. Garner, Black's Law Dictionary, at page 1207 (8th ed. 1999). (Emphasis added)

not one immediately apparent to any scrupulous citizen who confronts the question," and where the State has not otherwise proscribed the conduct in reasonably clear terms, the Due Process Clause forbids punishment of the attorney for that conduct. *In re Ruffalo*, 390 U.S. 544, 555-556, 88 S.Ct. 1222, at 1228-1229, 20 L.Ed.2d 117 (1968).

Where reputation is at stake in government action, notice and an opportunity to be heard are required. *Board of Regents v. Roth*, 408 U.S. 564, 573 (1972); *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971); *Wieman v. Updegraff*, 344 U.S. 183, 191, (1952).

In *Constantineau*, the Court stated:

"Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Id.* at 437.

A judgment may not be rendered in violation of constitutional protections. The validity of a judgment may be affected by a failure to give the constitutionally required due process. *Prather v Loyd*, 86 Idaho 45, 382 P2d 910 (1987). See also Restatements, Judgments § 4(b) and an opportunity to be heard. *Earle v. McVeigh,* 91US 503, 23 L Ed 398 (1999).

In the instant action publishing of the VSB *void ab initio* order revoking Rodriguez-father license to practice law not only exacts a severe deprivation of liberty and property interests that are fully protected by the Due Process Clause. *In re Ruffalo,* 390 U.S. 544, 550, 88 S.Ct. 1222, 1225, 20 L.Ed.2d 117 (1968), but to is a sever violation of Equal Protection of the Law since revocation of an attorney's license is based upon the ground of "misuse or loss of clients fund, neglect of client interests, fraudulent conduct, sanction in another jurisdiction, conviction of a crime, and misrepresentation ro the court."*see* http//www.sjccountyclerk.com/singjusprpr.html, <u>Public and Procedures Single Justice</u>–not for enforce an attorney's statutory rights. Thus the Defendant's Supreme Court of Virginia and VSB's casual indifference to the gravity of this injury inflicted on

Rodriguez's good name demeans the entire legal profession.[21]

The VSB revoking of Rodriguez-father license brands him as an unethical attorney who has violated his solemn oath of office and committed a "willful breach" of the Code of Professional Responsibility, and it has been published in statewide professional journals and the official reports of the VSB.

To demonstrate a due process violation, Rodriguez-father must also establish that the stigmatizing charges were publicized. See *Bishop v. Wood*, 426 U.S. at 348-49; *Brandt v. Board of Co-op. Educational Services,* 820 F.2d 41, 43 (C.A.2 (N.Y.) 1987). This he can do.

Recovery is limited "to those instances where the stigmatizing charges made in the course of discharge have been or are likely to be disseminated widely enough to damage the discharged employee's standing in the community or foreclose future job opportunities." *Id.* at 44.

Here, the publication has occurred by the VSB putting the *void order* on the World Wide Web, and notifying the various Federal Courts in which Rodriguez-father is a member, the Bar of the District of Colombia where his application to practice has been pending since July 17, 2005, and due to Rodriguez-father termination form employment based on the VSB void order.

<u>VSB DENIED RODRIGUEZ-FATHER HIS RIGHT TO DUE PROCESS</u>

Disbarment,[22] is designed to protect the public, it is a punishment or penalty imposed on the

---

[21]Given thatRodriguez-fatheris 61 years old, the revocation of his license is effectively a permanent disbarment because under Virginia he must await five (5) years even to take steps to reapply for admission.

[22]"Disbarment is a penalty for lawyers. It consists of no longer being allowed to practice <u>law</u> or argue cases. For most lawyers, this can essentially mean no longer having a livelihood.  Generally disbarment is imposed as a sanction for conduct indicating that an attorney is not fit to practice law, such as being convicted of a felony, willfully disregarding the interests of a client, or engaging in fraud which impedes the administration of justice.  In the United States legal system, disbarment is specific to regions; one can be disbarred from some courts, while still being a member of the bar in another jurisdiction. However, under the American Bar Association's Model Rules of Professional Conduct, which have been adopted in most states, disbarment in one state or court is grounds for

lawyer. *Ex parte Garland*, 4 Wall. 333, 380, 18 L.Ed. 366; *Spevack v. Klein*, 385 U.S. 511, 515, 87 S.Ct. 625, 628, 17 L.Ed.2d 574.

Disbarment proceedings are adversary proceedings of a quasi-criminal nature. *Cf. In re Gault*, 387 U.S. 1, 33, 87 S.Ct. 1428, 1446, 18 L.Ed.2d 527. Therefore, Rodriguez-father is accordingly entitled to procedural due process, which includes fair notice of the charge. See *In re Oliver*, 333 U.S. 257, 273, 68 S.Ct. 499, 507, 92 L.Ed. 682. Because the VSB could not find any "dirt" on Rodriguez-father after three years of investigation, they could not charge him of any wrong, but instead disbarred him for taking "actions" to enforce his statutory rights.

It was said in *Randall v. Brigham*, 7 Wall. 523, 540, 19 L.Ed. 285, that when proceedings for disbarment are 'not taken for matters occurring in open court, in the presence of the judges, notice should be given to the attorney of the charges made and opportunity afforded him for explanation and defense.' Therefore, one of the conditions the U.S. Supreme Court considers in determining whether disbarment by a State should be followed by disbarment here is whether 'the state procedure from want of notice or opportunity to be heard was wanting in due process.' *Selling v. Radford*, 243 U.S. 46, 51, 37 S.Ct. 377, 379, 61 L.Ed. 585.

Due process forbids the use of a presumption that relieves the VSB of proving any element of the crime charged. *Sandstrom v. Montana*, 442 U.S. 510, 514-24 (1979). The charge must be known before the proceedings commence, *In re Ruffalo,* 390 U.S. 544, 550, 88 S.Ct. 1222, 1225, 20 L.Ed.2d 117 (1968).

In the present case Rodriguez-father had no notice that the attempt to enforce his rights as a father and his statutory property right in his perfected Virginia Attorney's Lien could or would be

---

disbarment in a jurisdiction which has adopted the Model Rules. <u>Disbarment is quite rare</u>. Instead, lawyers are usually sanctioned by their own clients through civil malpractice proceedings, or via fine, censure, suspension, fines, or other punishments from the disciplinary boards." Wikipedia® is a registered trademark of the Wikimedia Foundation, Inc. (Emphasis Added)

considered a disbarment offense.  Furthermore, he had no notice that to enforce and protect his parental rights as a father would be the base of revoking his license. These guarantees apply fully to an attorney disciplinary proceedings. *In re Ruffalo,* 390 U.S. 544, 550, 88 S.Ct. 1222, 1225, 20 L.Ed.2d 117 (1968).

Given the traditions of the legal profession and an attorney's specialized professional training, there is unquestionably some room for enforcement of standards that might be impermissibly vague in other contexts; an attorney in many instances may properly be punished for "conduct which all responsible attorneys would recognize as improper for a member of the profession." *Id.,* at 555, 88 S.Ct., at 1228 (WHITE, J., concurring in result).  But where "[t]he appraisal of [an attorney's] conduct is one about which reasonable men differ, not one immediately apparent to any scrupulous citizen who confronts the question," and where the State has not otherwise proscribed the conduct in reasonably clear terms, the Due Process Clause forbids punishment of the attorney for that conduct. *Id.,* at 555-556, 88 S.Ct., at 1228-1229.

Moreover, the public reprimand in Virginia of Rodriguez-father exacts a severe deprivation of liberty and property interests that are fully protected by the Due Process Clause.

The reprimand brands Rodriguez-father as an unethical attorney who has violated his solemn oath of office and committed a "willful breach" of the Code of Professional Responsibility, and it has been published in statewide professional journals and the official reports of the Supreme Court of Virginia.

In light of the violation of the VSB of both statue and rules, the vagueness of the rules of the VSB, the Virginia Supreme Court's refusal to provide clarification and guidance by granting the TRO/Injunction and Writ of Mandamus, the trap for an unwary attorney acting in good faith not only works a significant due process deprivation, but also imposes an intolerable chill upon the exercise of First Amendment rights. See *supra,* at 665-666, and n. 8.

Page 18

The question before the Court, however, is not one of prediction but one of process. "A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense—a right to his day in court—are basic in our system of jurisprudence." *In re Oliver,* 333 U.S. 257, 273, 68 S.Ct. 499, 507, 92 L.Ed. 682 (1948). Under the Due Process Clause, "reasonable notice" must include disclosure of "the *specific* issues [the party] must meet," *In re Gault,* 387 U.S. 1, 33-34, 87 S.Ct. 1428, 1446-1447, 18 L.Ed.2d 527 (1967) (emphasis added), and appraisals of "the factual material on which the agency relies for decision so that he may rebut it," *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.,* 419 U.S. 281, 288, n. 4, 95 S.Ct. 438, 443 n. 4, 42 L.Ed.2d 447 (1974). These guarantees apply fully to an attorney, and disciplinary proceedings because, obviously, "lawyers also enjoy first-class citizenship." *Spevack v. Klein,* 385 U.S. 511, 516, 87 S.Ct. 625, 628, 17 L.Ed.2d 574 (1967). Where there is an "absence of fair notice as to the reach of the grievance procedure and the *precise* nature of the charges," so that the attorney is not given a meaningful opportunity to present evidence in his defense, the proceedings violate due process. *In re Ruffalo,* 390 U.S., at 552, 88 S.Ct., at 1226 (emphasis added).

The VSB violated Rodriguez-father rights pursuant to the Art. I, §§ 1, 2, 3, 7, 8, 11, 14, and 17; and Art. VI , §§ 1, 4, and 5 of the Constitution of Virginia, and the First, Fifth, Sixth, Seventh, Ninth, and Fourteenth Amendment to the United States Constitution, by use of an unauthorized procedure to deny him of this right to a jury trial, deprive Rodriguez-father of the right to discovery, and not give actual notice of alleged wrongs and facts in support thereof.  Furthermore, Rodriguez-father was denied due process by denying a meaningful hearing by refusing to issue Witness Summons, and Subpoenas *Duces Tecum* so to confront his accusers and to compel the production of documents in his defense.[23]

---

[23]The VSB "hearing" given to Rodriguez-father eviscerated the Confrontation Clause as applied in *Crawford v. Washington,* 541 U.S. 36 (2004) and *Tennessee v. Street,* 471 U.S. 409 (1995).

The record will confirm that Rodriguez-father was not only denied the right to confront witnesses against him, denied the right to present his defense based on his rights under Va. Code, Treaty and Federal statutes, denied the right to compel the production of documents on the issue of payment which would confirm that there was such an infirmity of any proof establishing misconduct on the part of 1st Vice Chair J. Leroy Banks and the VSB, as support the assertion that the VSB hearing procedure permits a "kangaroo court."[24]

## V.  VSB HAS DENIED RODRIGUEZ-FATHER EQUAL PROTECTION OF THE LAWS

The VSB denied Rodriguez-father his right to equal protection of the laws and his due process rights guaranteed to him by both the United States Constitution and the Constitution of Virginia.

Equal protection and due process rights are described in Section 1 of the Fourteenth Amendment to the United States Constitution in the following language: "No state shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."  The due process guarantees of Article I, Section 11 of the Constitution of Virginia are virtually the same as those of the United States Constitution.

However, the equal protection rights of Article I, Section 11 of the Constitution of Virginia are provided in its so-called "anti-discrimination" clause, which states: "the right [of a person] to be free from any governmental discrimination upon the basis of religious conviction, race, color, sex, or national origin shall not be abridged."

The VSB proceeding has violated both Constitutions by: first, stigmatizing Rodriguez-father by revoking his license for seeking to enforce his rights as a father under the Treaty and Va. Code,

---

[24]"*Kangaroo court.*" . . . 2. A. Court or tribunal characterized by unauthorized or irregular procedures, esp. so as to render a fair proceeding impossible. 3.  A sham legal proceeding. o The terms's origin is uncertain, traced to 1853 in the American West. 'Kangaroo' might refer to the illogical leaps between 'facts' and conclusions, or to the hapless defendant's quick bounce from court to gallows."  Bryan A. Garner, Black's Law Dictionary, at page 382 (8th ed., 1999).

Page 20

and second, stigmatizing Rodriguez-father by revoking his license for seeking to enforce his rights as an active member of the Virginia State Bar by finding irrespective of the facts that he was a Spanish Translator, so to issue a *void* order revoking Rodriguez's license, and effectively deprived Rodriguez-father of the equal protection of the law granted by the General Assembly of Virginia to all other Virginia attorneys under VA Code § 54.1-3932, VSB LEO #1325(A-17),[25] VA Bar LEO #1606, and #1766,[26] and the *stare decisis* of the Supreme Court of Virginia, *see Huges v. Cole*, 251 Va3 (1996); *Heinzman v. Fine, Fine, Legion and Fine*, 217 Va. 958 (1977).

a.    Rodriguez-father has been stigmatized.

The United States Supreme Court has stated that, "[w]e review liberty interest claims under the 'stigma-plus' test where '[e]ssentially, a plaintiff claiming a deprivation based on defamation by the government must establish the fact of the defamation "plus" the violation of some more tangible interest before the plaintiff is entitled to invoke the procedural protections of the Due Process Clause' and Equal Protection. *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1302 (11th Cir. 2001) (citing *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976))." *Silva v. Bieluch*, 351 F.3d 1045, 1048 (11th Cir. 2003).

Thus, where reputation is at stake in government action, notice and an opportunity to be heard are required. *Board of Regents v. Roth*, 408 U.S. 564, 573 (1972); *Wisconsin v. Constantineau*,

---

[25]This VSB LEO confirmed Rodriguez's right to sue his client SSA Entities *et al.,* for his fees in case of "fraud."

[26]LEO 1606, states that, "[w]hen the attorney is discharged prior to the completion of the representation he may recover the reasonable value of the service which he has rendered . . . and in instances where the fee is contingent upon the outcome of the matter, the attorney may . . . recovery in *quantum merit* for services actually rendered. *Virginia Lawyer Register*, <u>Answering Your Questions about Legal Ethics</u>, Anne P. Miche, Assistant Ethics Counsel, Vol 51/No. 8, p. 13, ¶ 17-March 2003. Therefore, because Rodriguez-father provided 12 years of legal services as a U.S. "ex-pat" managing attorney in Colombia from August 1988 to April 2000, based on *quantum merit* Rodriguez-father has an Attorney's Lien of $360,000 per year for a total of $4.6 million.

400 U.S. 433, 437 (1971); *Wieman v. Updegraff*, 344 U.S. 183, 191, (1952). In *Constantineau*, the Court stated: "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Id*. at 437.

The significance of public stigmatization has been long recognized and remedied in the law. *Roth*, 408 U.S. at 573. "Charges of attorney incompetence are far from a trivial matter for legal counsel. 'Professional reputation' is an attorney's lifeblood, and the stigma of a published finding of incompetence is obviously harmful to a legal career. It behooves all attorneys to treat with respect and care the professional reputation of every officer of the court, and not to tarnish it without just cause." *Paters v. U.S.*, 159 F.3d 1043, 1057 (C.A.7 (Wis.) 1998) (Coffey, Circuit Judge, dissenting and concurring).

Here, Rodriguez's reputation has been improperly tarnished without the protections of due process and equal protection by the charge of violating the spirit of the Virginia Code of Professional Responsibility, and as such, for reasons that have been recognized for more than 1000 years in Anglo-Saxon jurisprudence, immediate equitable satisfaction must be accorded him.

b. The Stigmatization Has Been Published

To demonstrate such a due process and equal protection violation, however, the plaintiff must also establish that the stigmatizing charges were publicized. See *Bishop v. Wood*, 426 U.S. at 348-49; *Brandt v. Board of Co-op. Educational Services*, 820 F.2d 41, 43 (C.A.2 (N.Y.) 1987).

Recovery is limited "to those instances where the stigmatizing charges made in the course of discharge have been or are likely to be disseminated widely enough to damage the discharged employee's standing in the community or foreclose future job opportunities." *Id*. at 44.

Here, the publication has occurred by publishing on the Virginia State Bar web site.

c. Rodriguez-father has been stigmatized "plus"

Page 22

Here that "more tangible interest" required by *Cannon v. City of West Palm Beach* is found in the violation by the VSB of Rodriguez' right under the Art. 1 Sec. 11 of the Constitution of Virginia and the First Amendment of the U.S. Constitution to petition the government for redress of grievances.

In *McDonald v. Smith*, 472 U.S. 479, 486 (1985), the U.S. Supreme Court recognized that:

> McDonald correctly notes that the right to petition the Government requires stringent protection. "The very idea of a government, republican in form, implies a right on the part of its citizens to meet peaceably for consultation in respect to public affairs and to petition for a redress of grievances." *United States v. Cruikshank*, 2 Otto 542, 92 U.S. 542, 552, 23 L.Ed. 588 (1876). The right to petition is "among the most precious of the liberties guaranteed by the Bill of Rights," *Mine Workers v. Illinois Bar Assn.*, 389 U.S. 217, 222, 88 S.Ct. 353, 356, 19 L.Ed.2d 426 (1967), and except in the most extreme circumstances citizens cannot be punished for exercising this right "without violating those fundamental principles of liberty and justice which lie at the base of all civil and political institutions," *De Jonge v. Oregon*, 299 U.S. 353, 364, 57 S.Ct. 255, 260, 81 L.Ed. 278 (1937).

Moreover, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content. *Cohen v. California*, 403 U.S. 15 (1971); *Street v. New York*, 394 U.S. 576 (1969); *New York Times Co. v. Sullivan*, 376 U.S. 254, 269-270, (1964), and cases cited; *NAACP v. Button*, 371 U.S. 415, 445 (1963); *Wood v. Georgia*, 370 U.S. 375, 388-389,(1962); *Terminiello v. Chicago*, 337 U.S. 1, 4 (1949); *De Jonge v. Oregon*, 299 U.S. 353(1937).

Here, the VSB has no power to stop Rodriguez-father from communicating his"message, ideas, subject matter, or content" regarding the violation of the rights of fathers and his property rights by the courts.

Here the VSB seeks to stigmatize by revoking Rodriguez-father's license in its attempt to harm his credibility and thus his ability to petition the government and associate with others through his campaign to make the court accountable.

Such an attack under the circumstances evidenced here is functionally similar to restricting

Page 23

Rodriguez's expression of his ideas in the first instance: both serve to prevent the recipient from crediting his message. The first by blocking receipt of the message. The second by so tarring the messenger that the messenger is shot before he can deliver his message.  Consequently, the imposition of any discipline by this court based on the VSB void order would result in grave injustice, as well as a violation of Rodriguez-father right to free speech and to petition the government guaranteed under the First Amendment.

As such, Rodriguez-father will prevail on his deprivation of First Amendment right's claim.

The record establishes that the revocation of Rodriguez-father is in retaliation for his filing a Virginia Tort Claims Act Notice against numerous Virginia Judges for their acts outside of their judicial capacity and jurisdiction by refusing to comply with the mandates of the General Assembly and Treaty, and to punish Rodriguez-father for his litigation to enforce his parental rights, and enforce and protect his perfected statutory property rights in his Virginia Attorney's pursuant to VA Code § 54.1-3932; Virginia Bar Legal Ethics Opinion #1325, February 27, 2990; VA Bar LEO 1606, and 1766, under color of the Rules of the Supreme Court of Virginia, but in violation of Constitutional rights.

This Court has held that even a minimal infringement upon Constitutional civil rights, constitutes irreparable injury sufficient to justify injunctive relief,  *Elrod v. Burns*, 427 U.S. 347 (1976).

Here, Rodriguez's reputation has been improperly tarnished without the protections of due process and equal protection of the laws by revoking his license because he has litigated to enforce and protect his perfected Virginia Attorney's Lien, and protect his parental rights as a father in accordance with the Treaty and VA Code.  Thus immediate equitable satisfaction must be accorded.

III.    The Threatened Injuries to Rodriguez-Father, Outweighs Whatever Damage the Proposed Injunction May Cause to Defendants.

The injuries to Rodriguez-father's business and profession, right to employment, perfected property rights, and civil rights are real given the immediate revocation of his license.

The record is clear that, these injuries will endure unless stopped by this Court, *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 at 486, 103 S.Ct. 1303 at 1317 (1983). The damages by the issuance of the TRO/Injunction are nonexistent for ending the violation of Rodriguez-father's statutory rights.

As for opposing parties, the Defendant Supreme Court of Virginia and its agents VSB, will be enjoined for doing unlawful acts.

IV.    The Preliminary Injunction, If Issued, Would Not Be Adverse to the Public Interest

Finally, based on the extensive record developed during the past three years of the depriving Rodriguez-father of his statutory property and obstructing his parental rights in violation of 18 U.S.C. § 1204, not only would issuance of the TRO/Injunction "not be adverse to the public interest," but quite the contrary is true.

V.    Rodriguez-father lack of an adequate remedy at law.

This Court's held in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 at 486, 103 S.Ct. 1303 at 1317 (1983), that it is the only Court which will review final state court decision on bar rules in a particular case, because the  district courts only have subject matter jurisdiction over "general challenges to state bar rules."

Thus due process mandates access to this Court so to grant this Motion.

Due process consists of "those fundamental principles of liberty and justice which lie at the base of all our civil and political institutions," *Hurtado v. California*, 110 U.S. 516, 535 (1884) (Emphasis added); *Ingraham v. Wright*, 430 U.S. 651, 673 (1977), quoting *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923). As Chief Justice Marshall declared in *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163 (1803), is,

[T]he very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury. One of the first duties of government is to afford that protection.

CONCLUSION

Because "[t]here is no crueler tyranny than that which is exercised under cover of law, and with the colors of justice …"– *U.S. vs. .Jannottie*, 673 F.2d 578, 614 (3d Cir. 1982), and the record of both the Supreme Court of Virginia and its agent the Virginia State Bar acts outside of statutory authority, judicial capacity and jurisdiction, have violated Rodriguez's statutory rights, and rights to due process and equal protection of the laws, and is causing irreparable harm this Court must issue the TRO and Injunction.

This court cannot show a casual indifference to the violations of Article VI § 1 and § 5 of the Constitution of Virginia, Va. Code §§ 54.1-3909, 54.1-3910, 54.1-3915, and 54.1-3935, the First, Fifth and Fourteenth Amendment to the United States Constitution, and 18 U.S.C. §§ 4, 241, 1001, and 1204, and the resulting injustice and gravity of the injury inflicted on Rodriguez-father"s good name, reputation, business and profession.  To do so would demean the entire legal profession.

Based on the record evidencing a conspiracy, which the VSB has aided and abetted, Rodriguez-father has been punished for:

a.  his litigation to enforce his parental rights as a father pursuant to VA Code § 20-146.25, Art. 21 of the Treaty, and the Joint Resolution 296 of the House of Representative; and,

b.  his litigation to enforce and protect his statutory property in his perfected Virginia Attorney's Lien pursuant to VA Code § 54.1-3932

Rather then either comply with their duty and the limits on their jurisdiction under the Constitution, the Virginia Code, and the Rules of the Supreme Court of Virginia, the VSB did issue and publish an *invalid* and *void ab initio* order so to stigmatize and punish in violation of 18 U.S.C. Rodriguez-father by illegally revoking his license to practice law in Virginia as of October 27, 2006.

Page 26

Based on the above discussed violations of VA Code, Treaty, Federal Statues, as well as Article I and V of the Commonwealth of Virginia Constitutions, and the 1st, 5th, 6th, 7th, 9th and 14th Amendments to the Untied States Constitution, these proceedings brings into question the entire Virginia State Bar Disciplinary System.

The record shows an intentional misuse of the VSB's power to obstruct and retaliate against Rodriguez-father because as an experienced active member of the Virginia State Bar and Federal civil litigator he has sought access to the courts for more than six years to stop the illegal policies and practices of various Federal and State government entities and employees who have intentionally obstructed with his parental rights as a father, and to protect and enforce his property rights in his perfected charging Virginia Attorney's Lien.

For the above reasons, this court must grant the TRO/Injunction based on the general violations pursuant to the First, Fifth and Fourteenth Amendment to the United States Constitution, and 18 U.S.C. §§ 4, 241, 242, 1001, and 1204, so to enjoin the *void* procedure of Defendant Virginia State Bar ("VSB") Disciplinary System, enjoin the *void* order of Defendant VSB of November 27, 2006 (Exhibits 3 and 4), enjoin the Defendant Virginia Supreme Court's recently scheduled *void* appeal hearing for June 5, 2007, at 0900 hrs, Richmond, Virginia (Exhibit 6), enjoin the Defendant Committee on Admissions of the D. C. Court of Appeals refusal to comply with DC Ct. App. Rule 46, based on the VSB *void* order (Exhibit 7); and enjoining the Defendants *Legal Times* and *Washington Post*, posting on the World Wide Net or publishing false, misleading, and defamatory news articles..

_____
Isidoro Rodriguez

*Law Office of Isidoro Rodriguez*

_United States Office:_
7924 Forest Peyton Trail
Annandale, Virginia 22003-1560
Telephones: 703.573.1571
e-mail:isidoror@earthlink.net
Cell phone: 703.470.1457

_South American Office:_
World Trade Center
Calle 76 No. 54-11, Office 313
Barranquilla, Colombia
Telephone: 011.575.348001

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                              :
ISIDORO RODRIGUEZ, ESQ.                       :
                                              :
                          Plaintiff,          : CASE NO. 07-CV-_____
                                              :
              v.                              :
                                              :
LEGAL TIMES, *et al.*,                        :
                                              :
                          Defendants.         :
_____:

## TEMPORARY RESTRAINING ORDER (PROPOSED)

Based on the Plaintiff Isidoro Rodriguez, Esq's ("Rodriguez-father"), complaint and motion for temporary restraining order/preliminary injunction, and supporting memorandum thereof, the court finds sufficient grounds for concluding that irreparable injury to Rodriguez-father business, profession, and right to employment as an attorney will continue to occur absent entry of a temporary retraining order pending a full hearing on the motion for a preliminary and permanent injunction.  Therefore, it is hereby ordered as follows:

1.    Defendants are temporarily retrained from enforcing, applying, or otherwise giving legal effect to the Virginia State Bar Disciplinary System Procedure found at Part 6, § IV, ¶ 13 of the Rules of the Virginia Supreme Court (copy attached as Plaintiff's Exhibit 1), which are in conflict and/or inconsistent with the duties of the "courts" of Virginia to assure his rights to due process and equal protection of the laws in accordance with the First, Fifth and Fourteenth Amendments to the U.S. Constitution, and Article I § 11 of the Constitution of Virginia under Art. VI § 1 and § 5 of the Constitution of Virginia, and the mandates of the General Assembly of Virginia enacted in VA Code §§ 54.1-3909, 54.1-3910, 54.1-3915, and 54.1-3935, pending further order of this court.

2.    Defendants are temporarily retrained from enforcing, applying, or otherwise giving legal

effect to the order of the Virginia State Bar issued on November 27, 2006 (copy attached as Plaintiff's Exhibit 3), revoking Rodriguez-father license to practice law in the Commonwealth of Virginia for his taking "actions" pursuant to statutory rights under Treaty and Va. Code as a father and as an active member of the Virginia State Bar, pending further order of this court.

3.  Defendant Virginia State Bar is temporarily retrained from publishing on the World Wide Web notice of the order of the Virginia State Bar issued on November 27, 2006 (copy attached as Plaintiff's Exhibit 4), pending further order of this court.

4.  Defendant Virginia Supreme Court is temporarily retrained from holding the hearing now scheduled for June 5, 2007, at 0900 hrs, Richmond, Virginia, pending further order of this court.

5.  Defendant Committee on Admissions of the District of Columbia Court of Appeals is enjoined from further delay in complying with DC Ct. App. Rule 46( c ) (3) or (f), so to grant Rodriguez-father either immediate admission to the District of Columbia Bar based on his being a member in good standing for more than five years previous to the filing of his waiver application on July 21, 2005, or in the alternative grant him his right to a public hearing within 10 Days to determine his "moral character and general fitness" for admission, pending further order of this court.

6.  Defendants *Legal Times* and *Washington Post*, are enjoined from posting on the World Wide Net or publishing false, misleading, and defamatory news article regarding Rodriguez-father litigation to enforce his rights under Treaty, Federal statue, and Va. Code, pending further order of this court, pending further order of this court.

7.  This temporary retraining order shall expire in ten (10) days unless it is extended for good cause by further order of this court, at the preliminary injunction hearing set for May ___, 2007.

8.     This temporary restraining order shall become effective immediately upon entry by the court.

Rodriguez-father is not required to post a bond or other security.

Dated this ____ day of May, 2007.

_____
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies a copy of the Motion for TRO and Preliminary Injunction with Memorandum of Law, and Order, were sent on May 24, 2007, to opposing counsels below by the stated method, with a copy of the Complaint:

By Process Server and Telefax
The Supreme Court of Virginia
100 North Ninth Street, Fifth Floor
Richmond, VA 23219

By Process Server and Telefax
Mr. James Leroy Banks, Jr., Esq.
Seyfarth & Shaw LLP, Suite 500
815 Connecticut Ave. N.W.
Washington, D.C.  20006-4004

By Process Server and Telefax
to Editor in Chief
*Legal Times*
1730 M Street, N.W.
Washington, D.C.  20036

By Process Server and Telefax to Editor in Chief
The Washington Post
1150 15th Street, N.W.
Washington, D.C. 20036

By Process Server and Telefax to
Committee on Admissions
District of Columbia Court of Appeals
500 Indiana Avenue, N.W.–Room 43200
Washington, D.C.  20001

Via U.S. Certified Priority Mail
No. 7006 0810 0005 5129 4165
and Telefax to
Ms. Karen Ann Gould, Esq., President
Virginia State Bar
Eighth & Main Building
707 East Main Street, Suite 1500
Richmond, VA 23219-2800

Via U.S. Certified Priority Mail
No. 7003 3110 0001 6587 8639
and Telefax to
Office of Attorney General
for the Commonwealth of VA
900 East Main Street
Richmond, Virginia 23219

Via U.S. Certified Priority Mail
No. 7006 0810 0005 5129 4189
and Telefax to
Hon. Leroy Rountree Hassell, Sr., Chief Justice
The Virginia Supreme Court
100 North Ninth Street, Fifth Floor
Richmond, VA 23219

_____
Isidoro Rodriguez, Esq. (VSB #21573)

THE LAW OFFICES OF ISIDORO RODRIGUEZ
ATTORNEYS AND COUNSELORS AT LAW

*Northern Virginia Office:*
7924 Peyton Forest Trail
Annandale, Virginia 22003
Telephone: 571.423.5066/telefax: 703.573.1571
Mobil: 703.470.1457
Email: isidoror@earthlink.net

*South American Office:*
World Trade Center
Calle 76 No. 54-11, Office 313
Barranquilla, Colombia
Telephone: 011.5753.605288
Telefax: 011.575.348001

Thursday 6th November, 2003.

On July 16, 2003 came the Virginia State Bar, by Jeannie P. Dahnk, its President, and Thomas A. Edmonds, its Executive Director and Chief Operating Officer, and presented to the Court a petition, approved by the Council of the Virginia State Bar, praying that Paragraph 13.A.; 13.8.S.a. (I); 13.B.8.d.; 13.F.3.c.; 13.G.I.a.; 13.G.1.d.; 13.G.4.; 13.H.2.1. (2); 13.H.2.n.; 13.H.2.o.: 13.H.4.a.; 13.1.2.£. (2); and 13.0., Section IV, of the Rules for Integration of the Virginia Supreme Court, be amended to read as follows:

13. Procedure for Disciplining, Suspending, and Disbarring Attorneys.

A.    Definitions

"Admonition" means a private sanction imposed by a Subcommittee sua sponte, a private or public sanction based upon an agreed disposition approved by a Subcommittee, or a public sanction imposed by a District Committee or the Board upon a finding that Misconduct has been established, but that no substantial harm to the Complainant or the public has occurred, and that no further disciplinary action is necessary.

"Dismissal De *Minimis*" means a finding that the Respondent has engaged in Misconduct that is clearly not of sufficient magnitude to warrant disciplinary action, and Respondent has taken reasonable precautions against a recurrence of same.

"Dismissal for Exceptional Circumstances" means a finding that the Respondent has engaged in Misconduct but there exist exceptional circumstances mitigating against further proceeding, which circumstances shall be set forth in writing

"Disciplinary Record" means any tangible or electronic record of:

b.    any proceeding in which a Complaint or Charge of Misconduct has been resolved by (1) a De *Minimis* Dismissal; (2) a Dismissal for Exceptional Circumstances; or (3) an Admonition; and,
c.    any proceeding in which the Respondent has been found guilty of a violation of CRESPA; and
d.    any proceeding which resulted in a sanction which created a disciplinary record at the time it was imposed.

"Private Discipline" means an Admonition without Terms issued by a Subcommittee sua sponte, Private Reprimand, or any form of discipline which is not public.

**13.B.8 Authority of the Courts, Council, COLD, the Board, District Committees, Bar Counsel and the Clerk of the Disciplinary System.**

5.    Authority and Duties of the Board

a. The Board shall have jurisdiction to consider:

(1) Appeals from Public or Private Reprimands, with or without Terms, or Admonitions, with or without Terms, imposed by District Committees or Dismissals that otherwise create a Disciplinary Record; . . .

*Isidoro Rodriguez, Esq. v. Legal Times, et al.,*
D.C. Dist. Ct Docket No._____
Hon. Judge_____
Motion for TRO/Injunction: Plaintiff's Exhibit 1

_VIRGINIA_:

    _In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond on_ Wednesday _the_ 25th _day of_ October, 2006.

Isidoro Rodriguez, Esq.

                                                 Appellant,

v.               Record No. 060520
                 Circuit Court No. CL215327

Danilo Devis Pereira, et al..

                                             Respondents.

                Upon a Petition for Writ of Mandamus

    On September 28, 2006 came the petitioner, in proper person, and filed a "motion for preliminary injunction and writ of mandamus." Thereupon came the Virginia State Bar Disciplinary System, by the Attorney General of Virginia, and filed a motion to dismiss or, in the alternative, a demurrer.

    Upon consideration whereof, the Court grants the motion to dismiss and the motion filed herein is denied and dismissed as frivolous.

    Respondent Virginia State Bar Disciplinary System shall recover of the petitioner its costs expended for its defense.

    Respondent's costs: Attorney's fee $50.00

                                               A Copy,
                                            Teste:
                                         _/S/_
                            Patricia L. Harrington, Clerk

                          _Isidoro Rodriguez, Esq. v. Legal Times, et al.,_
                              D.C. Dist. Ct Docket No._____
                                  Hon. Judge_____

                                 Motion for TRO/Injunction: Plaintiff's Exhibit 2

VIRGINIA:

### BEFORE THE VIRGINIA STATE BAR DISCIPLINARY BOARD

IN THE MATTER OF ISIDORO RODRIGUEZ

VSB DOCKET NOS. 04-052-0794 and 04-052-1044

### ORDER OF VIRGINIA STATE BAR DISCIPLINARY BOARD

**THIS MATTER** came on to be heard on the 26th and 27th days of October, 2006, before a panel of the Disciplinary Board consisting of James L. Banks, Jr., 1st Vice-Chair, presiding, (the "Chair"), William C. Boyce Jr., Glenn M. Hodge, William F. Glover, and Stephen A. Wannall, Lay member.  The Virginia State Bar ("VSB" or "Bar") was represented by Noel D. Sengel, Senior Assistant Bar Counsel. The Respondent, Isidoro Rodriguez, appeared in person and represented himself.  The Chair polled the members of the Board Panel as to whether any of them was aware of any personal or financial interest or bias which would preclude any of them from fairly hearing this matter and serving on the panel, to which inquiry each member, including the Chair, responded in the negative.  Donna T. Chandler, RPR, RMR, CCR  of Chandler & Halasz, court reporter, P.O. Box 9349, Richmond, Virginia, 23227, (804-730-1222) after being duly sworn, reported the hearing and transcribed the proceedings.

The matter came before the Board on the Subcommittee Determination (Corrected Certification) by the Fifth District Committee Section II.

At the beginning of the proceedings the Respondent renewed his motion for the members of the panel to disqualify themselves as being interested parties for the reasons stated in his written motion previously filed.  Upon consideration of this motion it was denied by the Panel for the reasons previously stated in the Board's Order of August 8, 2006 that originally addressed Respondent's Motion to Recuse and Disqualify Members of the Disciplinary Board Within the Jurisdiction of N. Virginia and the U.S. Dist. Ct. for the E.D. of Va. so to Assure Impartiality.

Plaintiff's Exhibit 1

# FINDINGS OF FACT

VSB Exhibits 1-92 were admitted during the course of the hearing without objection. The Respondent's Exhibits 1- 42 were admitted during the course of the hearing without objection or over Bar counsel's objection. The VSB presented evidence through its witnesses, the Respondent cross-examined the witnesses and thereafter testified on his own behalf. After consideration of the exhibits and the testimony the Board makes the following findings of fact on the basis of clear and convincing evidence:

**VSB No. 04-052-0794**

1.  At all times relevant hereto, Isidoro Rodriguez, hereinafter the "Respondent", has been an attorney licensed to practice law in the Commonwealth of Virginia and his address of record with the Virginia State Bar has been 7924 Peyton Forest Trail, Annandale, VA 22003-1560. VSB Ex. 1. The Respondent received proper notice of this proceeding as required by Part Six, § IV, ¶ 13 (E) and (I)(a) of the Rules of Virginia Supreme Court. VSB Ex. 2.

2.  The Complainant, Jack Harbeston, hereinafter referred to as "Harbeston", was the managing director of Sea Search Armada ("SSA"), a Cayman Island entity that invests in and conducts searches for sunken treasure ships and engages in the salvage and the recovery of their contents. Sometime prior to 1988 SSA had discovered what it thought to be the remains of sunken Spanish ships off the coast of Colombia. SSA had been unable to have its rights to any sunken treasure recognized by the government of Columbia and was looking for legal representation in Colombia to assert its claims. Harbeston sought assistance from the Economic Officer at the United States Embassy in Bogota, Colombia for names of attorneys who could represent SSA. The Economic Officer provided Harbeston with a list of attorneys in Colombia which included the Respondent as a member of the partnership of Devis and Rodriguez. Harbeston subsequently contacted the Respondent regarding possible legal representation. In his

conversation with the Respondent, Harbeston learned that Devis, a Colombian attorney, would handle any litigation on behalf of SSA in the Colombian courts. Harbeston was looking for an American attorney, if possible, because of his concerns as to the potentially divided loyalty of a Colombian attorney. In correspondence between the Respondent and Harbeston, Respondent noted that he was the only attorney licensed in the United States working in Colombia and as such his firm was subject to the same standards as law firms in the United States; that unlike any other firm in Colombia his firm "must comply with the State of Virginia Bar Association's Ethics of Professional Responsibility." VSB Ex. 4.

3.　　　　　SSA subsequently hired the firm of Devis and Rodriguez. By agreement dated October 20, 1988, the parties entered into a representation agreement prepared by Rodriguez which set forth the terms of the engagement including a fee arrangement on an hourly basis that had been discussed prior to the execution of the agreement. VSB Ex. 7. By affidavit dated October 21, 1988, Harbeston, as managing Director of SSA, authorized the law firm of Devis and Rodriguez to act as SSA's legal representative to pursue its claims in Colombia.

4.　　　　　In order for SSA to proceed with its claims in Colombia, SSA was required to appoint an agent with broad powers to represent SSA. By agreement dated December 16, 1988, executed in the District of Columbia, SSA appointed the Respondent as its legal representative in Colombia. Respondent's Ex. 8. However, Harbeston and SSA were concerned with the scope of the general power of attorney appointing Rodriguez as its agent in Colombia (Respondent's Ex. 8) and sought to limit his authority by advising the Respondent that he could only act upon the written authorization of Harbeston. By letter dated December 14, 1988, the Respondent acknowledged this limitation on his authority, noting that any violation of the restriction "will result in an action before the Virginia Bar Ethics Committee." VSB Ex. 9. By memorandum dated December 13, 1988, Harbeston

advised all law firms employed by SSA, including Devis and Rodriguez, that John Ehrlichman would coordinate and manage all litigation by SSA. VSB Ex. 8.

5.     By letter dated January 10, 1989 SSA authorized Respondent as its legal representative in Colombia to file a lawsuit against the Republic of Colombia to confirm its rights to the sunken ships. VSB Ex. 12. Thereafter, Devis proceeded to pursue SSA's claims in the courts of Colombia with apparent skill and professionalism to the satisfaction of SSA. Harbeston soon became dissatisfied with the Respondent's performance because of actions he took without written authorization but nevertheless continued the representation arrangement because of his satisfaction with Devis's performance as a litigator. By memorandum to Respondent dated June 9, 1989, (VSB Ex. 13) Harbeston reaffirmed that Respondent was to take no action on behalf of SSA without Harbeston's written authorization as Respondent had acknowledged by his December 14,1988 letter. Sometime thereafter, but prior to January 1990, the law firm of Rodriguez and Devis had dissolved but Devis continued to represent SSA in its ongoing litigation against the Republic of Colombia. By agreement dated January 3, 1991, Respondent, acting as attorney for SSA, entered into a professional services agreement with Devis to continue with the litigation on behalf of SSA against the Republic of Colombia. This agreement changed the fee arrangement to a contingency fee arrangement whereby Devis would receive 20% of any recovery. VSB Ex. 14. Devis and the Respondent then entered into an agreement to share any contingent fee recovery.

6.     By request dated January 3, 1990, the Respondent sought a legal ethics opinion from the VSB that as a Virginia attorney who had entered into a contract in Idaho to be performed in a foreign county, whether he could terminate his representation because the client had failed to pay his fee and could sue the client to collect such a fee. The VSB Ethics Committee gave its opinion on the issue (LEO 1325) that under the facts presented, the Respondent could terminate his representation and sue the client for fees,

4

with the opinion concluding with the customary notice that it was an advisory opinion and not binding on any court. VSB Ex. 18.

7.       Devis continued the litigation successfully as the case made its way through the Colombian judicial system as the Colombian government appealed each adverse decision. Respondent does not appear to have played any role in the litigation. By letter dated March 24, 2000 Devis advised Respondent not to use his name in Respondent's professional activities, and that Harbeston was upset with Respondent's activities and wanted to revoke the power of attorney. VSB Ex. 15. Devis acknowledged he would honor their contingent fee sharing arrangement. By letter dated April 6, 2000, Harbeston revoked the general power of attorney from SSA to Respondent (which he had forgotten to do earlier), stating that neither SSA nor its related entities owed Respondent any legal fees and that any understanding relating to fees was in the agreement between Devis and Respondent to share any contingency fee. VSB Ex. 16.

8.       In September of 2000 the Respondent filed suit against SSA in the United States District Court for the Eastern District of Virginia seeking to enforce a claim for attorney's fees in the amount of $4.5 million against SSA. VSB Ex. 19. The Respondent testified that he based the amount of his attorney's fee claim on the annual salary ($300,000 to $400,000) of a legal representative of a United States company in a foreign land for a period of 12 years. Included as defendants in this litigation were Harbeston, related entities to SSA and Devis. None of the defendants were residents of the Commonwealth of Virginia. The Respondent's basis for jurisdiction by the federal court in Virginia was the fact that he was a Virginia attorney, Virginia Code Section 54.1-3932 grants an attorney a lien for fees and LEO 1325 which said he could sue his client. The defendants in this litigation obtained the services of Harrison Pledger, a Virginia attorney, who filed a motion to dismiss based on the lack of personal jurisdiction over the defendants. This motion was granted and the suit was dismissed. The Respondent then appealed to the Fourth Circuit Court of Appeals and that court affirmed the District Court's ruling. The

5

Respondent then petitioned for a Writ of *Certiorari* in the United States Supreme Court but that petition was denied.

9.      After the denial of the Writ of *Certiorari* by the United States Supreme Court the Respondent filed a slightly different law suit in the United States District Court for the Eastern District of Virginia against the defendants in the earlier suit and also added several other defendants who were investors in SSA or related entities. VSB Ex. 20. The District Court dismissed this second law suit, finding that the Respondent had failed to plead additional facts to the first suit to give the court personal jurisdiction over any of the defendants. This ruling was affirmed on appeal to the Fourth Circuit. The Respondent then sought a Writ of *Certiorari* from the United States Supreme Court which was also denied.

10.     While the appeal of the second lawsuit was pending, the Respondent filed a third similar lawsuit, this time in the Circuit Court of Fairfax County against SSA. In this third lawsuit the Respondent named the defendants in the second law suit and Harrison Pledger and his law firm as defendants. VSB Ex. 21. This law suit was also dismissed but the court denied the defendants' motions for sanctions.

11.     The Respondent created a website which displayed false and misleading information regarding his relationship with SSA and his participation in the litigation in Colombia. VSB Ex 24 & 25. On the site, the Respondent claimed that in 1988, at the request of the United States Department of State, he became SSA's legal representative and managing attorney responsible for managing alternative dispute resolution negotiations and outside counsel in litigation against the government of Colombia, posts he claims he held until 2000. These assertions are not true. On his resume, the Respondent listed a LLM Civil law degree from the University of Bordeaux. While the Respondent attended a class at the University of Bordeaux, he never received a degree from that university. The Respondent also listed an American Trial Lawyers Ultimate Trial Lawyer Certification. There is no such certification. The basis for Respondent's

6

claim is the fact that he attended a one week continuing legal education program sponsored by the Association of Trial Lawyers of American titled "Ultimate Trial Advocacy".

12.     Respondent, in 2004, while communicating with the U. S. State Department regarding Freedom of Information Act ("FOIA") requests he had made for information relating to SSA litigation, represented that he was the attorney for SSA notwithstanding the fact that Harbeston had revoked his authority in 2000. VSB Ex. 23. Respondent claimed that since the power of attorney filed with the Colombian government had never been terminated he was not making a misrepresentation in his FOIA request.


**VSB Docket No. 04-502-1044**

1.      The Respondent lived for many years in Colombia and had married Amalin Hazbun Escaf, a citizen of Colombia. One son was born of the marriage. The marriage ultimately ended in a divorce in Colombia with the wife/mother obtaining custody of the son by order of a Colombian court with visitation rights to the Respondent.

2.      The Respondent subsequently returned to the United States where he has been living and his son visited him pursuant to the visitation rights granted by the Colombian Court. In 2001 while the son was visiting the Respondent, the Respondent refused to return his son to Colombia and filed an action in the Juvenile and Domestic Relations Court in Fairfax County to gain custody of his son.

3.      In 2001, subsequent to the filing of Respondent's suit in the Juvenile and Domestic Relations Court in Fairfax County, Respondent's ex-wife filed an action in the United States District Court for the Eastern District of Virginia, under the Hague Convention on the Civil Aspects of Child Abduction (the "Hague Convention") and the International Child Abduction Remedies Act ("ICARA") in order to secure the return to Colombia of her son. VSB Ex. 34. In this litigation she was represented by Patrick Stiehm, a Virginia attorney who had undertaken this representation *pro bono* at the request of the National

7

Center for Missing and Exploited Children ("NCMEC"). NCMEC is a non profit corporation that acts as a neutral in facilitating the processing of claims under the Hague Convention and ICARA. When Stiehm initially contacted Respondent to inform him of the pending litigation, Respondent told Stiehm that his *pro bono* representation would cost Stiehm "a big chunk of change." In keeping with this threat, Respondent immediately filed a motion for sanctions against Stiehm (VSB Ex. 35) but that motion was denied. VSB Ex. 38. However, Respondent's subsequent litigation described herein, which included Stiehm as a defendant, resulted in Stiehm incurring significant legal expenses to respond to meritless and vexatious litigation. After a bench trial the Court ruled that the Respondent had kept the child in Virginia in violation of his ex-wife's custody rights. VSB Ex. 39. The Court ordered that the child be removed from the Respondent's custody and returned to the child's mother in Colombia. The Respondent's appeals to the Fourth Circuit Court of Appeals and the United States Supreme Court were denied. After all appeals and stays were denied the son was reunited with his mother and left for Colombia in June of 2002.

4.     In January of 2003, the Respondent filed suit in the District Court for the District of Columbia against numerous defendants, including NCMEC, several employees of NCMEC, the United States District Court for the Eastern District of Virginia, the Fourth Circuit Court of Appeals, the Circuit Court of Fairfax County, the Court of Appeals of Virginia, the District Court for the District of Columbia, the United States Court of Appeals for the District of Columbia, various judges, a court clerk, the United States Department of State, Patrick Stiehm and Stephen Cullen (an attorney who had assisted Stiehm in the Virginia litigation) claiming a constitutional conspiracy by the defendants against him in his litigation in Virginia. VSB Ex. 43. Staff members of NCMEC had been witnesses in the Virginia litigation and NCMEC had provided legal representation to witnesses in the litigation in Virginia. In filing this litigation in which Respondent and his son were named as plaintiffs, Respondent, who is not licensed to practice in the

District of Columbia and had not obtained an order to appear *pro hac vice*, attempted to act as attorney for his son.

5.    In March of 2003, the Respondent filed a Writ of Mandamus in an attempt to compel NCMEC to take actions to force the country of Colombia to grant the Respondent access to his son. VSB Ex. 64. By letter dated September 24, 2003, Warren L. Dennis, Esquire, counsel for NCMEC, informed the Clerk of the United States Supreme Court that NCMEC would not be filing a responsive brief to the Respondent's Writ because, *inter alia*, it had no power to compel the government of the country of Colombia to do anything. VSB Ex. 65. Upon receipt of a copy of the letter, the Respondent called Mr. Dennis's office and left a voice mail message in which he threatened to file an ethics complaint because the letter falsely characterized the Respondent's Virginia litigation. Also, by letter dated September 29, 2003, the Respondent gave notice of his intent to file a judicial complaint and District of Columbia Bar complaint against those involved in the litigation unless facts already proved were proved within twenty-four (24) hours. VSB Ex. 67.

6.    In the District of Columbia litigation the Respondent repeatedly filed pleadings with no basis in law or fact. VSB Ex. 43 – 81. In an amended complaint (VSB Ex. 72) Respondent asserted a claim under the Racketeer Influenced and Corrupt Organization Act (RICO) 18 U.S.C. 1961. Included as defendants in the complaint were the United States Supreme Court, the United States Court of Appeals for the Fourth Circuit, the United States Court of Appeals for the District of Columbia, the United States District Court for the Eastern District of Virginia, the United States District Court for the District of Columbia, the Virginia Supreme Court, the Court of Appeals of Virginia and the Circuit Court of Fairfax County. Respondent's actions in the D.C. litigation clearly demonstrates his use of the legal system to harass and intimidate anyone whom he considered to have been involved in the Virginia litigation that returned his son to Colombia and to re-litigate the Virginia case.

7.    Respondent's actions in naming NCMEC and some of its employees as defendants in this litigation cost NCMEC over $160,000 in legal expenses and nearly bankrupted the organization. Throughout the course of this litigation, the Respondent misrepresented his credentials as a lawyer and his license status in the District of Columbia and New York to the courts and opposing parties. The Respondent graduated from law school in 1976. He was first licensed to practice law in the Commonwealth of Virginia in 1982. Virginia is the only jurisdiction in which Respondent has a license to practice law. The Respondent listed a number of governmental and quasi governmental legal jobs in the District of Columbia on his resume between the years 1976 and 1982 requiring a valid law license in the United States, during which period he was not licensed to practice law anywhere in the United States. The Respondent also noted on various documents that he practiced law in the District of Columbia for a period of time after his licensure in Virginia, but has never been licensed in the District of Columbia.

8.    During this litigation, the Respondent filed pleadings and attempted to represent his minor son on several occasions in the District of Columbia litigation, despite the fact there was a conflict of interest between the father and son, despite the fact that the Respondent would be a witness in the case and despite the fact that the judge instructed the Respondent to cease representing his son. VSB Ex. 48 & 50. The Respondent's law partner also attempted to represent the son but the court refused to permit that representation.

## I.    **MISCONDUCT**

The Certification for **VSB Docket No. 04-052-0794** charges violations of the following provisions of the Virginia Rules of Professional Conduct:

**RULE 1.2**    **Scope of Representation**

(a)  A lawyer shall abide by a client's decisions concerning the objectives of

representation, subject to paragraphs (b), (c), and (d), and shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision, after consultation with the lawyer, whether to accept an offer of settlement of a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

**RULE 1.5**      **Fees**

(a)  A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

**RULE 1.16**      **Declining Or Terminating Representation**

(a)      Except as stated in paragraph (c), a lawyer shall not represent a client or where representation has commenced, shall withdraw from the representation of a client if:

(3) the lawyer is discharged.

**RULE 3.4**      **Fairness To Opposing Party And Counsel**

A lawyer shall not:

(i)   file a suit, initiate criminal charges, assert a position, conduct a defense, delay a trial, or take other action on behalf of the client when the lawyer knows or when it is obvious that such action would serve merely to harass or maliciously injure

another.

**RULE 7.1    Communications And Advertising Concerning A Lawyer's Services**

(a)    A lawyer shall not, on behalf of the lawyer or any other lawyer affiliated with the lawyer or the firm, use or participate in the use of any form of public communication if such communication contains a false, fraudulent, misleading, or deceptive statement or claim. For example, a communication or advertisement violates this Rule if it:

    (1)    contains misleading fee information;

    (2)    states or implies that the outcome of a particular legal matter was not or will not be related to its facts or merits;

    (3)    compares the lawyer's services with other lawyers' services, unless the comparison can be factually substantiated;

    (4)    contains an endorsement by a celebrity or public figure who is not a client of the firm without disclosure (i) of the fact that the speaker is not a client of the lawyer or the firm, and (ii) whether the speaker is being paid for the appearance or endorsement; or

    (5)    contains a portrayal of a client by a non-client without a disclosure that the depiction is a dramatization.

In the determination of whether a communication or advertisement violates this Rule, the communication or advertisement shall be considered in its entirety including any qualifying statements or disclaimers contained therein.

**RULE 8.4    Misconduct**

It is professional misconduct for a lawyer to:

    (b) commit a criminal or deliberately wrongful act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer;

    (c) engage in professional conduct involving dishonesty, fraud, deceit or misrepresentation;

The Certification for **VSB Docket No. 04-052-1044** charges violations of the following provisions of the Virginia Rules of Professional Conduct:

**RULE 1.7    Conflict of Interest: General Rule**

(b)    A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

    (1)    the lawyer reasonably believes the representation will not be adversely affected; and

    (2)    the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

## RULE 3.1    Meritorious Claims And Contentions

A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established.

## RULE 3.3    Candor Toward The Tribunal

(a)    A lawyer shall not knowingly:

    (1)    make a false statement of fact or law to a tribunal;

    (2)    fail to disclose a fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client, subject to Rule 1.6;

    (3)    fail to disclose to the tribunal controlling legal authority in the subject jurisdiction known to the lawyer to be adverse to the position of the client and not disclosed by opposing counsel; or

    (4)    offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures.

## RIJLE 3.4    Fairness To Opposing Party And Counsel

A lawyer shall not:

(d)    Knowingly disobey or advise a client to disregard a standing rule or a ruling of a tribunal made in the course of a proceeding, but the lawyer may take steps, in good faith, to test the validity of such rule or ruling.

(h)    Present or threaten to present criminal or disciplinary charges solely to obtain an advantage in a civil matter.

(i)  File a suit, initiate criminal charges, assert a position, conduct a defense, delay a trail, or take other action on behalf of the client when the lawyer knows or when it is obvious that such action would serve merely to harass or maliciously injure another.

**Effective January 1, 2004**

(i)  Present or threaten to present criminal or disciplinary charges solely to obtain an advantage in a civil matter.

(j)  File a suit, initiate criminal charges, assert a position, conduct a defense, delay a trail, or take other action on behalf of the client when the lawyer knows or when it is obvious that such action would serve merely to harass or maliciously injure another.

**RULE 3.7    Lawyer As Witness**

(a)  A lawyer shall not act as an advocate in an adversarial proceeding in which the lawyer is likely to be a necessary witness except where:

(1)  the testimony relates to an uncontested issue;

(2)  the testimony relates to the nature and value of legal services rendered in the case; or

(3)  disqualification of the lawyer would work substantial hardship on the client.

**RULE 4.4    Respect For Rights Of Third Persons**

In representing a client, a lawyer shall not use means that have no purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person.

**RULE 5.5    Unauthorized Practice Of Law**

(a)  A lawyer shall not:

(1)  practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction; or

(2)  assist a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law.

**RULE 7.1. Communications Concerning A Lawyer's Services**

(a)  A lawyer shall not, on behalf of the lawyer or any other lawyer affiliated with the lawyer or the firm, use or participate in the use of any form of public communication if such communication contains a false, fraudulent, misleading,

14

or deceptive statement or claim. For example, a communication violates this Rule if it:

    (1)    contains false or misleading fee information; or

    (2)    states or implies that the outcome of a particular legal matter was not or will not be related to its facts or merits; or

    (3)    compares the lawyer's services with other lawyers' services, unless the comparison can be factually substantiated; or

    (4)    is likely to create an unjustified expectation about results the lawyer can achieve, or states or implies that the lawyer can achieve results by means that violate the Rules of Professional Conduct or other law.

## RULE 7.4 Communication Of Fields Of Practice And Certification

Lawyers may state, announce or hold themselves out as limiting their practice in a particular area or field of law so long as the communication of such limitation of practice is in accordance with the standards of this Rule, Rule 7.1, and Rule 7.3, as appropriate. A lawyer shall not state or imply that the lawyer has been recognized or certified as a specialist in a particular field of law except as follows:

    (a)    A lawyer admitted to engage in patent practice before the United States Patent and Trademark Office may use the designation "Patent Attorney" or a substantially similar designation;

    (b)    A lawyer engaged in Admiralty practice may use as a designation "Admiralty," "Proctor in Admiralty" or a substantially similar designation;

    (c)    A lawyer who has been certified by the Supreme Court of Virginia as a specialist in some capacity may use the designation of being so certified, e.g., "certified mediator" or a substantially similar designation;

    (d)    A lawyer may communicate the fact that the lawyer has been certified as a specialist in a field of law by a named organization, provided that the communication clearly states that there is no procedure in the Commonwealth of Virginia for approving certifying organizations.

## Effective Nov. 1, 2002

    (a)    A lawyer admitted to engage in patent practice before the United States Patent and Trademark Office may use the designation "Patent Attorney" or a substantially similar designation;

    (b)    A lawyer engaged in Admiralty practice may use as a designation "Admiralty," "Proctor in Admiralty" or a substantially similar designation;

(c)    A lawyer who has been certified by the Supreme Court of Virginia as a specialist in some capacity may use the designation of being so certified, e.g., "certified mediator" or a substantially similar designation;

(d)    A lawyer may communicate the fact that the lawyer has been certified as a specialist in a field of law by a named organization, provided that the communication clearly states that there is no procedure in the Commonwealth of Virginia for approving certifying organizations.

## RULE 8.4    Misconduct

It is professional misconduct for a lawyer to:

(b)    commit a criminal or deliberately wrongful act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer;

(c)    engage in professional conduct involving dishonesty, fraud, deceit or misrepresentation;

**Effective Mar. 25, 2003**

(b)    commit a criminal or deliberately wrongful act that reflects adversely on the lawyer's honesty, trustworthiness or fitness to practice law.

(c)    engage in conduct involving dishonesty, fraud, deceit or misrepresentation which reflects adversely on the lawyer's fitness to practice law;

## III. DISPOSITION

Upon review of the forgoing finding of facts, the exhibits presented by Bar Counsel on behalf of the VSB as Exhibits 1- 92, the exhibits presented by the Respondent as the Respondent's Exhibits 1-42, the evidence from witnesses presented on behalf of the VSB and evidence presented by the Respondent in the form of his own testimony, and at the conclusion of the evidence regarding misconduct, the Board recessed to deliberate. After deliberation the Board reconvened and stated that it had found by clear and convincing evidence that the Respondent had violated the following Rules of Professional Conduct: in Docket No. 04-052-0794, Rule 1.2(a); 1.5(a); 1.16(a)(3); 3.4(i); 7.1(a); 8.4(b) & (c); in Docket No. 04-052-1044, Rule 1.7(b) 1-2; 3.1; 3.4 (d)(h)(i)(j); 3.7(a)(1-3); 4.4 and 8(b) and (c).

The Board stated that the Bar had failed to prove by clear and convincing evidence any violation of the following the Rules of Professional Conduct: 3.3(a)1-4; 5.5(a)1-2; 7.1(a)1-4; 7.4(a)(b)(c)(d); and effective Nov. 1, 2002 7.4(a)(b)(c)(d).

The bases for the Boards finding of violation of the Rules of Professional Conduct are as follows:

**VSB Docket No. 04-052-0794**

(a)    The Respondent violated Rule 1.2(a) (Scope of Representation) in that his authorization to act on behalf of his client SSA was limited, but he nonetheless acted without written authorization from his client. Furthermore, after he had been discharged by SSA, he wrote the Department of State claiming to be the managing attorney of SSA, which was not the case. He also made a FOIA request without any authorization.

(b)    The Respondent violated Rule 1.5(a) 1-8 (Fees) with his claim of a fee of 4.5 million dollars. Respondent acknowledged that the fee arrangement was a contingent fee arrangement and no recovery had been made. Therefore, there was no basis to claim a fee. Furthermore, the amount of the fee, $4.5 million, does not appear to have any reasonable relationship to work actually performed which is necessary for a recovery on a *quantum merit* basis. Respondent testified that he determined the amount based upon what the salary would be for a legal representative for a U. S. company operating in a foreign country.

(c)    The Respondent violated Rule 1.16 (a)(3) (Declining or Terminating Representation) by representing that he was SSA's managing attorney in a FOIA request (VSB Ex. 23), which he made well after SSA had terminated their relationship.

(d)    The Respondent violated Rule 3.4(i) (Fairness to Opposing Party and Counsel) by filing the litigation in the United States District Court for the Eastern District of

17

Virginia and the Circuit Court of Fairfax County, Virginia. It should appear to any reasonably competent lawyer that the courts did not have jurisdiction over the parties named as defendants. Even giving the Respondent the benefit of the doubt as to the first suit, he received a ruling that the court lacked personal jurisdiction over the defendants which was upheld on appeal. He nonetheless filed a second suit with the same infirmity seeking the same recovery. Furthermore, his suit in the Circuit Court of Fairfax County, Virginia, included as a defendant Harrison Pledger and his law firm, merely because Mr. Pledger had acted as defense counsel in the two suits in the federal court.

(e) The Respondent violated Rule 7.1(a) 1-5 (Communication Concerning a Lawyer's Services) by misrepresentation on his website and resume. VSB Exhibits 24 and 25 show that Mr. Rodriguez, on the website he created, misrepresented his relationship with SSA. He misrepresented what he did for SSA and how he became employed by SSA. He misrepresented his education by listing an LLM civil law degree from the University of Bordeaux. He improperly claimed a certification (the American Trial Lawyer Ultimate Trial Lawyer Certification) where no such certification exists.

(f) The Respondent violated Rule 8.4(b) and 8.4(c) (Misconduct) by representing in his FOIA request that he was the managing attorney for SSA, when the evidence shows that he clearly was not.

## VSB Docket No. 04-052-1044

(a) The Respondent violated Rule 1.7(b) 1-2 (Conflict of Interest) in his attempt to represent his son in the District Court for the District of Columbia and his continued actions to do so even in the face of a court ruling that there was a conflict.

18

(b)    The Respondent violated Rule 3.1 (Meritorious Claims and Contentions) by his litigation in the District Court for the District of Columbia and his actions in the Circuit Court of Fairfax County, Virginia. The complaint filed by the Respondent with all the parties he named as defendants standing alone shows that the Respondent has violated this Rule. The numerous pleadings filed thereafter further demonstrate that the Respondent's aim was to punish anyone who had any connection with the litigation filed by his former wife to regain custody of their son. Any attorney who had in any way appeared in that litigation ended up being named as a defendant. NCMEC and several of its staff were named as defendants resulting in a legal cost to NCMEC alone of $160,000.00 Attorney Patrick Stiehm who had taken Respondent's ex-wife's case *pro bono* was named as a defendant thereby making good on Respondent's claim that Stiehm's representation would cost him a "big chunk of change."

Furthermore, in litigation in Fairfax County, Respondent subpoenaed two members of NCMEC as witnesses for a hearing involving his efforts to file a Statement of the Case for an appeal, when these two staff members had nothing to do with the Fairfax litigation. While the subpoenas were quashed they nevertheless had the effect of harassing the NCMEC staff members. Remarkably this is the only instance in which the Respondent was sanctioned by a court. Perhaps if he had been sanctioned earlier, either by the United States District Court for the Eastern District of Virginia or the District Court for the District of Columbia, such action would have put a stop to Respondent's unwarranted and vexatious conduct. Unfortunately neither of the courts saw fit to impose sanctions.

(c)    The Respondent violated Rule 3.4(d)(h)(i)(j) (Fairness to Opposing Party and Counsel) by the following conduct: (1) by continuing to attempt to represent his son in the District of Columbia litigation in the face of a court ruling, in violation

19

of Rule 3.4(d); (2) by threatening the NCMEC attorney with a bar complaint and filing a criminal complaint with the FBI, in violation of 3.4(h); (3) by filing a motion for sanctions against Patrick Stiehm and naming Stiehm as a defendant in the District of Columbia litigation and by his entire course of conduct in the District of Columbia litigation, in violation of Rule 3.4(i)(j);

(d)     The Respondent violated Rule 3.7(a) 1-3 (Lawyer as Witness) by acting as an advocate when he was a necessary witness in the Eastern District of Virginia litigation.

(e)     The Respondent violated Rule 4.4 (Respect for the Rights of Third Persons) by the whole course of litigation in the District Court for the District of Columbia.  In addition, his subpoena of Ms. Brinkerhoff and Mr. Dennis to the Fairfax Circuit Court for a hearing on the Statement of Facts to be submitted for appeal further demonstrates a violation of this Rule.

(f)     The Respondent violated Rule 8.4(b) and 8.4(c) (Misconduct) in asserting a RICO claim and by his letter to the FBI.

Thereafter, the Board received further evidence of aggravation and mitigation from the Bar and the Respondent, including the Respondent's prior disciplinary record.  The Board recessed to deliberate what sanction to impose upon its findings of misconduct by the Respondent. After due deliberation the Board reconvened to announce the sanction imposed. The Chair announced the sanction as REVOCATION.

The Board in reaching its decision of revocation recognized that the violation of certain of the Rules such as Rule 1.5(a), 7.1, and 8.4(b) &(c) standing alone may not merit the ultimate sanction of revocation.  However, the Respondent's conduct by pursuing litigation in Virginia in Docket No. 04-052-0794 and in the District of Columbia in Docket No. 04-052-1044 is conduct that cannot be tolerated.  While a court through sanctions can protect itself from such conduct by a deceitful and unprincipled attorney, the public must look to the VSB for protection.  The other violations demonstrate Respondent's complete disregard for the Rules of Professional Conduct.

20

Furthermore the Respondent was defiant to any criticism of his conduct in pursuing what can only be described as meritless and vexatious litigation. This same defiance was evident to the Board as the Respondent sought to justify his conduct. Therefore the Board concluded that the sanction of revocation was the only remedy by which the public and bar could be adequately protected.

Accordingly, it is ORDERED that the Respondent's license to practice law in the Commonwealth of Virginia is revoked, effective October 27, 2006.

It is further ORDERED that the Respondent must comply with the requirements of Part Six, § IV, ¶ 13(M) of the Rules of the Supreme Court of Virginia. The Respondent shall forthwith give notice by certified mail, return receipt requested, of the revocation of his license to practice law in the Commonwealth of Virginia, to all clients for whom he is currently handling matters and to all opposing attorneys and presiding judges in pending litigation. The Respondent shall also make appropriate arrangements for the disposition of matters then in his care in conformity with the wishes of his client. The Respondent shall give such notice within 14 days of the effective date of the revocation, and make such arrangements as are required herein within 45 days of the effective date of the revocation. The Respondent shall also furnish proof to the Bar within 60 days of the effective day of the revocation that such notices have been timely given and such arrangements made for the disposition of matters.

It is further ORDERED that if the Respondent is not handling any client matters on the effective date of October 27, 2006, he shall submit an affidavit to that effect to the Clerk of the Disciplinary System at the Virginia State Bar. All issues concerning the adequacy of the notice and arrangements required by Paragraph 13 (M) shall be determined by the Virginia State Bar Disciplinary Board, unless the Respondent makes a timely request for hearing before a three-judge court.

It is further ORDERED that pursuant to Part Six, § IV, ¶ 13.B.8.c. of the Rules of the Supreme Court of Virginia, the Clerk of the Disciplinary System shall assess all costs against the Respondent.

21

It is further ORDERED that the Clerk of the Disciplinary System shall mail an attested copy of this order to the Respondent at his address of record with the Virginia State Bar, being 7924 Peyton Forest Trail, Annandale, VA 22003-1560, by certified mail, return receipt requested, and by regular mail to Noel D. Sengel, Bar Counsel, Virginia State Bar, Suite 310, 100 North Pitt Street, Alexandria, Virginia, 22314-3133.

ENTERED this 28th day of November, 2006

VIRGINIA STATE BAR DISCIPLINARY BOARD

By: _____
James L. Banks, Jr., 1st Vice Chair

06020306

22