UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                           :
ISIDORO RODRIGUEZ, ESQ.                    :
                                           :
                  Plaintiff,               : CASE NO. 07-CV-0975 (PLF)
                                           :
         v.                                :
                                           :
LEGAL TIMES, *et al.*,                     :
                                           :
                  Defendants.              :
_____:

PLAINTIFF'S REPLY TO DEFENDANT *LEGAL TIMES* IN SUPPORT OF THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION

Plaintiff Isidoro Rodriguez's ("Rodriguez-father") in support of his first and second motion for the issuance of a TRO/Preliminary Injunction to enjoin the Defendants *Legal Times* and *Washington Post's* on going participation in a conspiracy to stigmatize and injure Rodriguez-father in violation of 18 U.S.C. § 4, § 241 (obstruction of justice in a conspiracy to injure or intimidate for the exercising of Federal right); Civil R.I.C.O. 18 U.S.C. §§ 1661 through 1668 U.S.C.(obstructing enforcement of statutory Federal and VA Code rights); and 18 U.S.C. § 1204(assisting in the obstructing of parental rights under Treaty and Va. Code), by their on going publishing of false and misleading news articles and posting them on the World Wide Web.

PRELIMINARY STATEMENT

The First Amendment to the United States Constitution provides that "Congress shall make no law...abridging the freedom...of the press." Although the First Amendment specifically mentions only the federal Congress, this provision now protects the press from all government, whether local, state or federal.

The founders of the United States enacted the First Amendment to distinguish their new government from that of England, which had long censored the press and prosecuted persons who dared to criticize the British Crown. As Supreme Court Justice Potter Stewart explained in a 1974 speech, the "primary purpose" of the First Amendment was "to create a fourth institution outside the government as an additional check on the three official branches" (the executive branch, the legislature and the judiciary).(Emphasis added)

Justice Stewart cited several landmark cases in which the Supreme Court -- the final arbiter of the meaning of the First Amendment -- has upheld the right of the press to perform its function as a check on official power. (Emphasis added) James[1] C. Goodale, "The First Amendment and Freedom of the Press," Press Freedom .

In short, the U.S. Supreme Court recognized that the First Amendment protection were needed because, as Justice Stewart write in the *Pentagon Papers* case, "without an informed and free press there cannot be an enlightened people." *New York Times Co. v. United States*, 403 U.S. 713 at 730 (1971).

In both total disregard of its responsibility to the public and in violation of its function as an independent news source checking the abuse of government power, *Legal Times* made intentional misstatement of facts and law in its article (attached as Exhibit 1, to *Legal Times* Response in Opposition to Motion TRO/Preliminary Injunction), in furtherance of a conspiracy to both stigmatize Rodriguez-father for exercising his rights under 'Treaty and Va. Code,[2] by focusing only on the government's Beltway spin of Rodriguez-father's litigation in *Isidoro Rodriguez and Isidoro Rodriguez-Hazbun v. National Center for Missing & Exploited Children*, D.C. No 03-0120.

The fact show that in the 1723 word article (Defendant's Exhibit 1), the *Legal Times* intentional published a false article in furtherance of a conspiracy so to mislead the public by not explaining that Rodriguez-father's litigation was filed to compel the government to secure his

---

[1] James C. Goodale served as general counsel to *The New York Times* when the U.S. Supreme Court decided that the Times could continue to publish the then-classified Pentagon Papers., *see New York Times Co. v. United States,* 403 U.S. 713 (1971)("*Pentagon Papers Case"*).

[2] The record shows that part of the criminal "enterprise," was the illegal cover-up of malfeasance in office of violations of the provision of the the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980 ("Treaty"); Congressional Joint Concurrent Resolution 293 of May 23, 2000; and, Virginia's Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"), Va Code § 20-146.01 et seq., *see Canter v. Cohen*, 442 F.3d 196 (March 21, 2006), by the implementation of unlawful policies and practices of the Defendants United States Department of Justice, United State Department of State, and their independent contractor acting as an "instrumentality of government, the National Center for Missing & Exploited Children.

visitation rights pursuant to the Joint Custody Agreement, Treaty and Va. Code, and for damages for the government's use of unauthorized policies and practices in violation of the Joint Custody Agreement, Treaty and Va. Code. This article both assisted the denial to an impartial review of the illegal shanghaiing of Rodriguez-father's Son to the Republic of Colombia, and assisted the conspiracy to intentionally obstruct Rodriguez-father's parental rights by blocking of the securing of his Son's visitation to the United States pursuant to the Treaty and Va. Code for nearly five years in violation of 18 U.S.C. § 1204.

Consequently, because the *Legal Times* was not seeking to serve either the public or any of the laudable objectives First Amendment, but instead directly participate in a criminal conspiracy, the motion for the issuance of a TRO/Injunction involve neither the First Amendment protection against prior retrains nor the limitation on the actions for defamation.

<u>UNITED STATES CONSTITUTIONAL PROVISIONS INVOLVED</u>

The Supremacy Clause United States Constitution, article VI, clause 2, provides:
This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every States shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

The Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670, 19 I.L.M. 1501,

*Article 2*
Contracting State shall take all appropriate measures to secure within their territories the implementation of the object of the Convention. For this purpose they shall use the most expeditious procedures available.

*Article 19*
A decision under the Convention concerning the return of the child shall not be taken to be a determination on the merits of any custody issue.

Chapter IV–Right of Access, *Article 21*
An application to make arrangement for organizing or, securing the effective exercise of the rights of access may be presented to the Central Authority of the Contracting States in the same way as an application for the return of a child.
The Central Authorities are bound by the obligations of co-operation which are set forth in

Article 7 to promote the peaceful enjoyment of access rights and the fulfillment of any conditions to which the exercise of those rights are subject. The Central Authorities shall take steps to remove, as far as possible, all obstacles to the exercise of such rights.

The Central Authorities, either directly or through intermediaries, may initiate or assist in the institution of proceedings with a view to organizing or protecting these rights and securing respect for the conditions to which the exercise of these rights may be subject.

## FEDERAL STATUTES INVOLVED

42 U.S.C. § 11601(a)-The International Child Abduction Remedies Act, The Convention on the Civil Aspects of International Child Abduction, . . . establishes legal rights and procedures for the prompt . . . securing the exercise of visitation rights. . . . (b) Declarations-The Congress makes the following declarations:. . . .(4) The Convention and this chapter empower courts of the United States to determine under the Convention and not the merits of any underlying child custody claims.

18 U.S.C. § 4 - Misprision of felony, states that "[w]hoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.

18 U.S.C. § 241 - Conspiracy against rights, state that, "[i]f two or more persons conspire to injure, oppress, threaten, or intimidate any person in any . . . Commonwealth, . . . , or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; . . . They shall be fined under this title or imprisoned not more than ten years, or both . . . .

18 U.S.C. § 1204 - International parental kidnapping. . . . (a) Whoever. . . retains a child (who has been in the United States) outside the United States with intent to obstruct the lawful exercise of parental rights shall be fined under this title or imprisoned not more than 3 years, or both. . . . .

## SECTIONS OF THE VIRGINIA CODE INVOLVED

Uniform Child Custody Jurisdiction and Enforcement Act, VA Code § 20-146.25. Temporary visitation. —
A. A court of this Commonwealth that does not have jurisdiction to modify a child custody determination may issue a temporary order enforcing: 1. A visitation schedule made by a court of another state . . . .;

VA Code § 20-146.29. Expedited enforcement of child custody; determination. —C. Upon the filing of a petition, the court shall issue an order directing the respondent to appear in person with or without the child at a hearing and may enter any order necessary to ensure the safety of the parties and the child. The hearing must be held on the next judicial day after service of the order unless that date is impossible. In that event, the court shall hold the hearing on the first judicial day possible. The court may extend the date of hearing at the request of the petitioner.

VA Code § 20-146.35. Appeals. — An appeal may be taken from a final order in a proceeding under this article in accordance with expedited appellate procedures in other civil cases. . . .

FACTS

Isidoro Rodriguez, Esq. ("Rodriguez-father") and his ex-wife, entered a Joint Custody Settlement Agreement on August 1, 1997 ("Settlement Agreement")(attached as Plaintiff's Exhibit 1 and 2), pursuant to the laws of the Republic of Colombia ("Colombia"), Civil Code Title XII, Article 253 and Article 264, *Legis*, ed. 2002, wherein both parents retained visitation and residual parental rights for their son, Petitioner Isidoro Rodriguez-Hazbun ("Isidoro-son").

No complaint was ever filed by either parent with any court in Colombia or the Virginia to provide jurisdiction to modify, amend or revoke either parents residual and visitation rights under the Agreement.[3]

Pursuant to VA Code § 20-146.4( c ), and Articles 13 and 20 of the Treaty, when Isidoro-son was 13 year-old he requested that Rodriguez-father file a petition to modify the Settlement Agreement, based on Isidoro-son's fundamental rights and "best interests" as a U.S. citizen, his preference to reside in Virginia with Rodriguez-father, and his concern for his and his father's safety because of the increasing violence in Colombia against U.S. citizens, *Isidoro Rodriguez-Hazbun v. Amalin Hazbun*, Fairfax County J&D Court (July 13, 2001, No. JJ347050-01-03).[4]

But the Hon. Judge T.S. Ellis III in *Escaf v. Rodriguez*, 200 F.Supp. 2d 603 (E.D. Va. 2002), acted outside of his judicial authority and capacity in furtherance of a conspiracy with the Federal Executive Branch's unlawful policies to disregard the exceptions to the Treaty and not apply the provisions of Va. Code, so to thereby disregard Isidoro-son right access to the courts in the United States under VA Code § 20.146 1 *et seq.,* Articles 13, 19, 20 and 29 of the Treaty, and 42 U.S.C. §

---

[3] On August 26, 1997, a Colombian Court based on its limited jurisdiction reconfirmed Rodriguez-father's parental and visitation rights.

[4] 42 U.S.C. § 11603, provides that, "[t]he courts of [Virginia] and the United States district courts shall have concurrent original jurisdiction of actions arising under the [Treaty]."

11601(b)(4), to order Isidoro-son taken from the United States to Colombia by his mother on June 11, 2002.

In summary, Judge Ellis acting outside of his judicial capacity and jurisdiction by conspiring with the Defendants United States Department of State, United States Department of Justice, and independent contractor acting as an "instrumentality of government," the National Center for Missing & Exploited Children ("NCMEC"), its employees and attorneys ("Executive Branch"),[5] to disregard of the Congressional mandated concurrent jurisdiction of Fairfax County J&D Court under the Article 29 of the Treaty and VA Code § 20-146.1 *et seq.*; and, to disregard the exception under Article 13 and 20 of the Treaty, and rights under VA Code § 20-146.1 et seq., to deny Isidoro-son's rights wishes and "best interest" as a 13 year old boy deciding to stay in Virginia, deny the existence of "zone of war" in Colombia, and deny controlling *stare decisis* fundamental parental rights.[6]

However, consistent with the *stare decisis* in the above cited case, Associate Justice Sandra O'Conner granted a stay of Judge Ellis' order on May 23, 2002, S. Ct. Docket No. 01A930, despite the denial of previous motions to the U.S. Court of Appeals for the 4th Circuit, and by the former 4th Circuit Court Judge, Chief Justice William Rehnquist.

But on June 10, 2002, the full U.S. Supreme Court negligently refused to maintain the stay or provide an expedited hearing pursuant to Articles 2 and 11 of the Treaty. One day afterwards Isidoro-son was taken from the United States to Colombia. Four months later the 4th Circuit

---

[5] The NCMEC under a Cooperative Agreement has received more than $100 million in grants and awards from the Federal government since 1999, to paid provide the administrative process in the United States for petition to secure international visitation pursuant to Article 21 of the Treaty and 42 U.S.C. § 11601(a).

[6] In *Troxel v. Granville*, 530 U.S. 57 (2000), this Court confirmed that the Due Process Clause of the Fifth Amendment guarantees more than fair process, because it has a substantive component that provides heightened protection against government interference with fundamental rights and liberty interests, including the interest of a parent in the, "care, custody, and control of their children–[as] perhaps the oldest of the fundamental liberty interest recognized." *Id.* at 63.

negligently affirmed Judge Ellis III's order, *Hazbun v. Rodriguez*, 52 Fed. Appx. 204 (4th Cir. 2002), cert. den. U.S. S.C. Docket No. 02-1268, April 28, 2003.

On January 27, 2003, based on the above record of negligent omission outside of their judicial and ministerial authority under Article 19 of the Treaty, and 42 U.S.C. § 11601(b)(4), VA Code § 20-146.35, by both the Federal Executive and Judicial Branches of government collusion in total disregard of the rights under the Agreement, Treaty and VA Code, Rodriguez-father and Isidoro-son filed a Notice of Federal Tort Claims, and then a complaint for the issuance of a Writ of Mandamus to the Executive Branch to promptly secure visitation in accordance with Articles 2 and 21 of the Treaty and VA Code § 20-146.25 and .29, and for damages under various federal causes of action ("*Father/Son I*"), *Isidoro Rodriguez, father of Isidoro Rodriguez-Hazbun v. National Center for Missing and Exploited Children et al.*, U.S.D.C. Dist. Ct., No. 03-0120 (Judge Richard W. Roberts).

In response to *Father/Son I*, Defendants did compound their earlier abuse of their judicial and ministerial authority under Article 19 of the Treaty, and 42 U.S.C. § 11602(b)(4), by violating 18 U.S.C. § 241, and § 1204, so to punish by obstructing Rodriguez-father's parental and visitation rights for seeking to exercise his rights under VA Code § 20-146.25, .29, and .35, and Articles 2, 21 and 29 of the Treaty.[7]

 Furthermore, in violation of 18 U.S.C. § 4 and § 241, Defendants used their influence with the Defendant *Legal Times* to publish a false and erroneous news article (Defendant's Exhibit 1), by intentionally misstating both the above facts and laws involved in the litigation to thereby characterize Rodriguez-father's action as only about a "[f]ather's lawsuit for custody," and not that the gravamen of their complaint in Docket No. 03-0120, was for the <u>expeditious secure visitation</u>

---

[7]*Article 29* of the Treaty states, "[it] shall not preclude any person, . . . who claims there has been a breach of . . . [visitation] within the meaning of . . . Article 21 from applying directly to the judicial or administrative authorities . . . whether or not under the [Treaty]."

under the Treaty and VA Code and for damages.

The same day of the publication of the *Legal Times* article Rodriguez-father was terminated from employment as a Contract Attorney in the District of Columbia,, and "blacked balled" when seeking other positions in the District of Columbia.

DISCUSSION

I. The Requested Injunction Is Not An Unconstitutional Prior Restraint

In the motion for a TRO and Preliminary Injunction, Rodriguez-father does not seek compensation for injuries he has suffered by the illegal conspiracy in violation of 18 U.S.C. § 4, § 241, and § 1204, but instead seeks suppression of the *Legal Times* false and misleading news article which was published to injure and stigmatize Rodriguez-father in the District of Columbia, and the Beltway area in general, for exercising his statutory rights to compel the securing of visitation pursuant to Treaty and Va. Code, and damages based on ministerial and judicial malfeasance.

Such relief against misleading and false statements in furtherance of criminal acts by the *Legal Times* is not presumptively unconstitutional. *United States v. Fleschner*, 98 F.3d 155, 158-159 (4th Cir. 1996), *cert. Denied* 117 S. Ct. 2484 (1997)(First Amendment does not protect speech acts in furtherance of an illegal conspiracy); *United States v. Aguilar*, 515 U.S. 593, 605 (1995)(First Amendment defense rejected in part because statute only imposes restrictions on those who disclose wiretap information in order to obstruct, impede or prevent a wiretap interception); and United States v. Freeman, 761 F.2d 549 (9th Cir. 1985), *cert denied*, 476 U.S. 1120 (1986)(no First Amendment defense when Defendant helped to file a false income tax return)

II. *Legal Times* Article Does Not Contain Constitutionally Protected Speech

The *Legal Times* argues that the rule against prior restraints ought to apply because the article is protected by the First Amendment. Rodriguez-father respectfully disagrees.

Although it is true that the constitutional guarantee of free speech, particularly on matters of public concern, is so broad that it protects even the advocacy of illegal activity. *Noto v. United States*, 367 U.S. 290, 298 (1961); *Yates v. United States,* 354 U.S. 298, 318 (1957), as noted it does not protect criminal acts.  *Brandenburg v. Ohio,* 395 U.S. 444, 447 (1969).

Because the *Legal Times* article sets forth misleading and false information and opinion which expressly encourages violation of the Treaty and Va. Code by covering up the malfeasance in office and has assisted criminal conduct by the covering up illegal acts. Its acts are not constitutionally protected.

"A function of free speech under our system of government is to invite dispute."<u>Terminiello v. City of Chicago</u>, 337 U.S. 1, 4 (1949). Free speech may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger. Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea. That is why freedom of speech, though not absolute, is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a <u>serious substantive evil that rises far above public inconvenience, annoyance, or unrest</u>. There is no room under our Constitution for a more restrictive view-unless it involves criminal acts-as here.

But from an objective perspective, by keeping correct information as to the violations of the Treaty and Va. Code, the misstatement of fact and law in the *Legal Times* article has result in actions in furtherance of malfeasance, and as the current record suggests has produced further unlawful conduct in violation of 18 U.S.C. § 241 and § 242.

CONCLUSION

For the above reasons, this court must grant the TRO/Preliminary Injunction to enjoin the false and misleading articles posted on the World Wide Web.

_____/s/_____
Isidoro Rodriguez, Esq.

THE LAW OFFICES OF ISIDORO RODRIGUEZ
ATTORNEYS AND COUNSELORS AT LAW

*United States Office:*
7924 Forest Peyton Trail
Annandale, Virginia 22003-1560
Telephones: 703.573.1571
e-mail:isidoror@earthlink.net
Cell phone: 703.470.1457

*South American Office:*
World Trade Center
Calle 76 No. 54-11, Office 313
Barranquilla, Colombia
Telephone: 011.575.348001

CERTIFICATE OF SERVICE

I, the undersign counsel, hereby certify that on this 19th day of June, 2007, a true and correct copy of the foregoing Reply in Support of Motion for Emergency Consideration of the Petition for TRO/Preliminary Injunction, and Memorandum of Law, were served by the District Court's ECF system, and on the Editor in Chief, The Washington Post, 1150 15th Street, N.W. Washington, D.C. 20036 by U.S. Mail, first class postage prepaid:

_____/s/_____
Isidoro Rodriguez, Esq. (VSB #21573)

THE LAW OFFICES OF ISIDORO RODRIGUEZ
ATTORNEYS AND COUNSELORS AT LAW

*Northern Virginia Office:*
7924 Peyton Forest Trail
Annandale, Virginia 22003
Telephone: 571.423.5066/telefax: 703.573.1571
Mobil: 703.470.1457
Email: isidoror@earthlink.net

*South American Office:*
World Trade Center
Calle 76 No. 54-11, Office 313
Barranquilla, Colombia
Telephone: 011.5753.605288
Telefax: 011.575.348001