UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                                                    :
ISIDORO RODRIGUEZ, ESQ.                       :
                                                                                     :
                   Plaintiff,     :  CASE NO. 07-CV-0975 (PLF)
                                                            :
            v.                                          :
                                                                  :  (ORAL ARGUMENT REQUESTED)
LEGAL TIMES, *et al.*,                              :
                                                                 :
                  Defendants.  :
_____ :

MOTION FOR RECONSIDERATION OF ORDER DATED JUNE 18, 2007

COMES NOW Isidoro Rodriguez, Esq. ("Rodriguez-father"), counsel of record to move the Court for reconsideration of its order of June 18, 2007, pursuant to Fed. R. Civ. P. 59(e).[1]

Rodriguez-father believes that there are material issues of fact regarding the activity in the District of Columbia of the Defendant *Legal Times,* Defendant *Washington Post,* and Defendant Committee on Admissions for the District of Columbia Court of Appeals in violation of 18 U.S.C. § 241 and § 242, which the court failed to consider that make trail essential in the District of Columbia on both due process and equal protection grounds, and the Court did not at all consider Rodriguez-father allegation of the criminal violation 18 U.S.C. § 4, § 241, § 242, § 371, § 1001, and § 1204, by the Federal Executive Branch and Judicial Branch in the District of Columbia. Consequently, the Court committed clear error and its order is unjust.[2]

---

[1] A motion for reconsideration of a court order in a civil matter may be made within ten (10) days of the entry of the order, excluding holidays and weekends. A motion under Fed Rule Civ. Proc. 59(e) suspends the finality of judgement and for appeal.

[2] See Motion to Disqualify, and Judicial Complaint filed against the Hon. Judge Paul L. Friedman based on his lack of impartiality as demonstrated by a refusal to comply with the mandates of 18 U.S.C. § 4, § 241, § 242, and § 1001, to request a Special Prosecutor, which is "conduct prejudicial to the effective and expeditions administration of the court."

In particular Rodriguez-father believe that he has ample evidence of proper venue in the District of Columbia:[3]

First, the record between January 27, 2003 to March 10, 2007, confirms numerous incidents of ministerial and judicial malfeasance in the District of Columbia in furtherance of a conspiracy in violation of 18 U.S.C. § 4, § 1001, and 1204, therefore outside of both the ministerial and judicial capacity and jurisdiction of the Federal Executive,[4] and Judicial Branch in the District of Columbia.

In summary, the record evidence that the objective of the criminal enterprise was the obstruction of Rodriguez's parental and visitation rights for more than five (5) years in violation of a valid Joint Custody Settlement Agreement, Article III § 2, and the I, V, and IX Amendments to the U.S. Constitution; Congressional Resolution 293 of March 23, 2000; Articles 2, 11, 19, 20, 21, and 29 of the Treaty, 42 U.S.C. § 11601 *et se.*; 51 Fed. Reg. 10,513 (1986); and VA Code 20-146.25 and .29. Both the Defendant United States Department of State and Defendant United States Department of Justice, and the key employees are in the District of Columbia ( *see* Petition for Writ of Mandamus, Docket No. 03-5092 to the Defendant U.S. Department of State *et al.,* April 7, 2003, and Petition for TRO/Injunction and Writ of Mandamus, Docket No. 05-5130, April 6, 2005).

Second, the record evidence of the subsequent compounding of the above alleged criminal violations, by the numerous additional incidents of ministerial and judicial malfeasance in

---

[3] In a civil action where the Court's jurisdiction is not based solely on diversity of citizenship, as in this case, venue is proper in ". . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . or (3) a judicial district in which any defendant may be found, if there is no district in which the action may be brought." 28 U.S.C. § 1391(b). Under these criteria, venue in the District of Columbia is proper. A substantial part of the events or omissions giving rise to Rodriguez-father's claims occurred in the District of Columbia, and giving the interstate conspiracy between Virginia and the District of Columbia there is no district in which the action may be brought.

[4] The National Center for Missing and & Exploited Children is covered by the Federal Tort Claims Notice filed on June 15, 2005.

furtherance of a conspiracy in violation of 18 U.S.C. § 241, and § 242, by criminal enterprise to injure, punish, and stigmatized Rodriguez-father for litigating to enforce his parental rights under Treaty and Va. Code, by the Defendants Covington & Burling, Eric H. Holder, Jr., Ms. D. Jean Veta, Esq., as agents of the Executive Branch, to conspire to attempt to file fraudulent bar complaint with the Bar of the District of Columbia and then use their influence to block for two (2) years his admission by waiver into the Bar of District of Columbia, the denial of a hearing pursuant to the Rules of the District of Columbia Court of Appeals, and use their influence to obtain the conducting of *void* proceeding and the issuance of a *void* order by the Virginia State Bar in violation of Article VI § 1 and § 5 of the Constitution of Virginia and Va. Code §§ 54.1-3909, 54.1-3910, 54.1-3915, and 54.1-3935 to revoke Rodriguez-father's license to practice law.

Third, the record evidence numerous incidents of ministerial and judicial malfeasance in furtherance of a criminal conspiracy in violation of 18 U.S.C. § 4, § 371, § 1001, and § 1204, thus outside of judicial capacity and jurisdiction occurring in the District of Columbia by Judge Richard W. Roberts and Chief Justice John G. Roberts.

Fourth, the record evidence the on going unlawful collusion of the Committee on Admission of the District of Columbia Court of Appeals, the Supreme Court of Virginia, and Virginia State Bar, to deprive Rodriguez-father of his right of employment as an attorney in the District of Columbia in violation of the Rules of the District of Columbia Court of Appeals, thereby further injuring him and his family,[5] based on the *void* proceedings and order issued in illegal violation the Constitution of Virginia, and Va Code.

In summary, not only has Rodriguez-father been injured and deprived of the father/son relationship for more than five years by the violation of his rights as a parent by the above named

---

[5] Rodriguez-father's Son, Isidoro Rodriguez-Hazbun has been accepted as a Freshman in Virginia Tech to begin in August 2007. The first installment of tuition is due on August 7, 2007.

jurist in the District of Columbia, but now in retaliation for his litigating to enforce his statutory rights, he and his family have been injured, punish, and stigmatized by the illegal denial of his admission into the Bar of the District of Columbia.

Therefore venue is proper in the District of Columbia because the doctrine of judicial immunity does not apply when there has been criminal act and when seeking an injunction.

WHEREFORE, Rodriguez-father respectfully requests that the Judge Paul L. Friedman, reconsider and vacate his order of June 18, 2007, and set this case for trial.

DATED this 21st day of June 2007.

Respectfully submitted,

_____/s/_____
Isidoro Rodriguez, Esq.

THE LAW OFFICES OF ISIDORO RODRIGUEZ
ATTORNEYS AND COUNSELORS AT LAW

<u>United States Office:</u>
2304 Farrington Avenue
Alexandria, Virginia 22303-1520
Telephones: 703.317.0526; Fax: 703.960.0225
Cell: 703.470.1457
Email: isidoror@earthlink.net

<u>South American Office:</u>
World Trade Center-Barranquilla
Calle 76 No. 54-11, Office 313
Barranquilla, Colombia, SA
Telephone: 011.5753.605288

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                       :
ISIDORO RODRIGUEZ, ESQ.                :
                                       :
                   Plaintiff,          : CASE NO. 07-CV-0975 (PLF)
                                       :
          v.                           :
                                       : (ORAL ARGUMENT REQUESTED)
LEGAL TIMES, *et al.*,                 :
                                       :
                   Defendants.         :
_____ :

MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RECONSIDERATION

Comes now Isidoro Rodriguez, Esq. ("Rodriguez-father"), to file this memorandum of law in support of his Motion for Reconsideration.

Argument

A motion for reconsideration under Fed. R. Civ. P. 59(e) is appropriate where the Court "mistakenly has decided issues outside of those the parties presented for determination." *Foutty v. Equifax Services, Inc.*, 764 F. Supp. 621, 622 (D. Kan. 1991); *see also Gregg v. American Quasar Petroleum Co.*, 840 F.Supp 1349, 1401 (D. Col. 1991). Where the court has misunderstood a part's position, a motion for reconsideration is also proper. *Foutty*, 764 F. Supp at 622; *Gregg*, 840 F. Supp. At 1401; *Above The Belt, Inc. V. Mel Bahannon Roofing, Inc.,* 99 F.R.D. 99, 101 (E.D. Va. 1983). Such a motion is also appropriate to correct a manifest error of law or fact and to present newly discovered evidence. *Fautty*, 764 F.Supp at 622.

I. <u>Defendant's are NOT automatically Entitled to Immunities</u>

At the outset the ill conceived Immunity Defenses are NOT an Absolute nor a Safe Bastion from Which Defendant Public Officials and Judiciary can Violate Rodriguez-father's Human and Civil Rights with impunity.

JUDICIAL IMMUNITY-EARLY FORMULATIONS

The concept of judicial immunity developed in our law from early Anglo-Saxon origins. As Professor Block informs: "Under Anglo-Saxon law of the tenth and eleventh centuries, a judgment (doom) could be impeached by charging the official proposing the judgment (the doomsman) with falsehood. This proceeding, known as "forsaking the doom", developed into the complaint of "false judgment", whereby a dissatisfied litigant obtained a writ commanding the challenged court to cause a record of its proceedings to be made and brought before the court of the litigant's superior lord. The complainant could accept the court's record and thus confine the issues to errors of law. But this record could be challenged by anyone willing to engage in physical combat with the champions of the challenged court. If the challenge succeeded, the lower court's judgment was annulled and the court was amerced. Block, _Stump v Sparkman and the History of Judicial Immunity_, 4980 Duke L.J. 879, 881 (l980).

Displeased with trial by combat, law evolved in England, and in the early l7th century Sir Edward Coke in *Floyd and Barker*, 77 Eng. Rep. 1305 (Star Chamber l607), and *The Case of the Marshalsea*, 77 Eng. Rep. 1027 (Star Chamber l6l2), laid out the foundation for the doctrine of judicial immunity. In *Barker*, Coke established the immunity of a judge "for anything done by him as a judge" 77 Eng. Rep. at l307. It seems that Judge Barker convicted William Price of murder and sentenced him to death. After the sheriff executed Mr. Price, one Mr. Floyd brought charges against Judge Barker for conspiracy. Sir Edward Coke's decision gave immunity from suit to all of those involved in the prosecution of Price, made it quite clear that Judge Barker's immunity was absolute. In so doing, Coke identified four (4) grounds in public policy for judicial immunity. First, he indicated a necessity for a finality of judgment. Second, Coke offered that immunity is necessary to maintain judicial independence. Third, Coke held for the independence of thought and freedom from manipulation that immunity would provide, and lastly, Coke offered that in order to engender

respect and confidence in the judiciary and the government, immunity for judicial acts was necessary.

Some five years after declaring immunity for judicial acts, Lord Coke modified his doctrine in *The Case of the Marshalsea*, 77 Eng. Rep. 1027 (Star Chambers l6l2). In *Marshalsea*, Coke set forth a jurisdictional limitation on the doctrine of judicial immunity. For immunity to apply said Coke, not only did the act have to be judicial in nature, but the judge must have had subject matter jurisdiction over the cause for which he acted. In *Marshalsea*, a judge presiding over a case in assumpsit found against the defendant. This defendant's surety was jailed until the judgment was paid. The surety brought an action against the judge for his imprisonment and the judge defended by claiming immunity. Rejecting the immunity claim, Coke held that the judge had no jurisdiction over actions in assumpsit and thus the proceedings were void. As Coke described it:

> "[W]hen a Court has (a) jurisdiction of the cause, and proceeds *inverso ordine* or erroneously, there the party who sues, or the officer or minister of the Court who executes the precept or process of the Court, no action lies against them. But (b) when the Court has not jurisdiction of the cause, there the whole proceeding is [before a person who is not a judge], and actions will lie against them without any regard of the precept or process..." 77 Eng. Rep. at 1038-41. (Emphasis added)

Clearly, this laid the foundation for judicial immunity.

Coke established requirements for its application, <u>restricting immunity to judicial acts made within the judge's jurisdiction</u>. In addition, he set forth a policy underlying the doctrine: (1) insuring the finality of judgment; (2) protecting judicial independence; (3) avoiding continuous attacks on sincere and conscientious judges; and (4) maintaining respect for the judiciary and the government.

The first significant American adaption of judicial immunity came in l8l0, when James Kent authored the New York decision of *Yates v Lansing*, 5 Jons. 282 (N.Y. Sup. Ct. l8l0) Aff'd 9 Jons. 395(N.Y. 1811). In this case, Chancellor John Lansing, Jr. had arrested John Yates for malpractice and contempt. Yates was subsequently set free on a Writ of Habeas Corpus when the New York

Supreme Court found the arrest to have been illegal. Chancellor Lansing claimed that the discharge from jail was illegal and imprisoned Yates again. Yates then brought a civil action against Lansing for violation of the Habeas Corpus Act. Chief Justice Kent of the New York Supreme Court held for the Defendant Chancellor on the grounds of judicial immunity. In its decision, Kent first considered the history of judicial immunity and then applied the immunity test set forth by Lord Coke.

Realizing that the new American courts did not have the superior and inferior dichotomy of the English courts, Justice Kent adopted the doctrine to fit the American court's system. The Yates decision had a tremendous impact on American jurisprudence and was considered the leading authority on judicial immunity until the Supreme Court addressed the issue in 1868. See e.g. Feinman and Cowen, Suing Judge's: History and Theory, 31 S.C.L.Rev. 201 (1980). In *Randall v Brigham*, 74 U.S. (7 Wall) 523 (1869) and again in *Bradley v Fisher*, 80 U.S. (13 Wall) 335 (1872), Mr. Justice Field incorporated the doctrine into American common law.

After more than a century of virtual silence, the doctrine of judicial immunity resurfaced in *Stump v Sparkman*, 435 U.S. 349 (1978). In this unfortunate case, a mother brought a petition to Judge Stump to have her fifteen year old daughter sterilized. The mother swore that her daughter was promiscuous and that sterilization would be in the best interest of the child. The judge approved the petition in an ExParte proceeding without giving the daughter notice or an opportunity for a hearing. The daughter was told that she was going to undergo an appendectomy and sterilized. Two years after the operation, when married, this woman discovered that she had been sterilized and brought an action against the judge for violating her constitutional rights. Applying the doctrine from Randall v Brigham and Bradley v Fisher, the Supreme Court held that Judge Stump was absolutely immune from a suit for damages. First, the court determined that Judge Stump had subject matter jurisdiction in acting upon the petition. Second, the court determined that Judge Stump's approval of the petition was a judicial act and, therefore, he was protected by the Doctrine of Judicial

Immunity. In reaching its decision in Stump, the court articulated a test to determine what constitutes a judicial act. The court offered:

> "The relevant cases demonstrate that the factors determining whether an act by a judge is a "judicial" one relate to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." 435 U.S. 349, 362 (emphasis added)

"ABSOLUTE JUDICIAL IMMUNITY" DOES NOT EXIST IN AMERICAN LAW

In *Pulliam v Allen*, 456 U.S. 522 (l984), the court held that judicial immunity does not bar an award of attorney fees against a judge when a plaintiff wins a suit against that judge for injunctive or declaratory relief. In *Pulliam*, the Supreme Court ruled that a magistrate was liable for over $80,000.00 in legal fees and costs because her conduct caused private injury to Plaintiff Allen.

The Court held in this fashion even though her actions were indisputably judicial acts within her subject matter jurisdiction. In this case, Magistrate Pulliam set bail for several defendants who were accused of non-jailable offenses. *Pulliam*, 466 U.S. at 525. When some of the accused individuals were unable to make bail, she ordered them incarcerated. Richmond Allen, one of the bail defendants, sued Magistrate Pulliam for violating his civil rights. Allen did not seek monetary damages; rather he sought injunctive relief to prevent Pulliam from continuing this kind of practice. The first court Allen approached found Pulliam's actions unconstitutional and enjoined her from engaging in such conduct in the future. *Allen v Burt*, 690 F2d 376, 377 (4th Cir. l982).

Interestingly, this District Court awarded Allen attorney's fees of $7,000.00 under USC §l988. Judge Pulliam appealed the award claiming judicial immunity and the Supreme Court affirmed despite finding that Pulliam had acted in her judicial capacity and within her subject matter jurisdiction. The court held that the doctrine of judicial immunity does not preclude injunctive relief as opposed to money damages against a judicial officer acting in a judicial capacity and, judicial immunity does not preclude a statutory award of attorney's fees generated in obtaining that

injunctive relief.

After this "death blow" for absolute judicial immunity, numerous efforts have been attempted in the Federal Congress pushed primarily by the American Bar Association to re-institute absolute judicial immunity. All have failed.

Following on *Pulliam* in l984, the Court took up *Forrester v White,* 44 U.S. 2l9, l08 S.Ct. 538 (l988). In *White* a former probation officer filed an action against a state court judge alleging that she was demoted and discharged on account of her sex in violation of the Equal Protection clause of the Fourteenth Amendment. After a jury found in favor of the former probation officer, the District Court for the Southern District of Illinois entered summary judgment for the judge on the grounds of "absolute" judicial immunity.

The Court of Appeals for the Seventh Circuit applied the two prong *Stump* test and logically concluded that the firing of the probation officer was a judicial act within the judge's jurisdiction. 792 F2d 647 (7th Cir. l986). Following a Writ of Certiorari, the United States Supreme Court unanimously reversed. Writing for the court, Justice O'Connor offered that the court "has generally been quite sparing in its recognition of claims to absolute official immunity" 44 U.S. at 224.

Holding that the actions of Judge White in firing Ms. Forrester were not entitled to judicial immunity, the court refused to apply even quasi-judicial immunity. See also, *Guercio v Brody*, 814 F2d 1115 (1987). Reversing the District and 7th Circuit Court of Appeals, *Forrester* like *Pulliam* make it quite clear that absolute judicial immunity is dead in American jurisprudence.

In the Mireles v Waco,112 S. Ct. 286 (1991) opinion, the Court issued a per curiam opinion and disavowed the functional approach articulated in *Forrester* and returned to the *Stump v Sparkman* two-pronged judicial act test. As the law stands, there is no "absolute judicial immunity" and our Supreme Court requires the two-prong tests:

1. Does the court have subject matter jurisdiction;

2. Is the act a judicial act.

Then and only then, according to *Mireles* (1991) does judicial immunity apply.

It was this very test and the extra-judicial acts of the Committee on Admission for the District of Columbia Court of Appeals, the Supreme Court of Virginia, and the Virginia State Bar, that must lead this Court to hold that there is no judicial immunity for criminal acts.

In summary, Chief Justice Marshall in the famous Marbury v Madison, 1 Cranch 137 (1803) made it quite clear:

> "The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws when he receives an injury." 1 Cranch 137 at 163 (1803).

In this context, as citizens and their counsel began to utilize 42 USC § 1983 actions to redress grievances, the Court began to articulate its sense of the statute:

> "The purpose of the statute was to deter public officials from using the badge of their authority to violate persons' constitutional rights and to provide compensation and other relief to victims of constitutional deprivations when that deterrence failed." *Carey v Piphus,* 435 US 247, 253 (1978)

Thus tThe Supreme Court, lesser Federal and State courts have made it quite clear that immunity must be granted very sparingly. Indeed, in *Scheuer v Rhodes*, 416 US 232 (1974) the Supreme Court turned aside arguments for immunity as it applied to governors. In *Wood v Strickland*, 420 US 308 (1975) the Supreme Court refused to give immunity to members of school boards, and in *Hazo v Geltz,* 537 F2d 747 (3d Cir. 1976) the federal court insisted that court personnel performing many of their functions were entitled to only "good faith immunity". In recent years, the court has refused to expand the concept of immunity to prison directors, *Procunier v Navarette,* 434 US 555 (1978) and to cabinet officers as well as their principle subordinates *Butz v Economou,* 98 S.Ct. 2894 (1978).

In *Monroe v Pape,* 365 US 167 (1961) the Court said that actions undertaken by those who would claim immunity: "Should be read against the background of tort liability that makes a man

responsible for the natural consequences of his actions." 365 US at 187, 81 S Ct, 484 (1961). (Emphasis added).

An agency of the government must scrupulously observe rules, regulations, or procedures which it has established. When it fails to do so, its action cannot stand and the courts will strike it down. See *Ex rel. Accardi v. Shaughnessy* 347 U.S. 260 [1964] and *In Board of Educ. of A.A. Co. v. Barbano,* 45 Md App 27 [19 "No man in this country," this court has said, "is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All the officers of the Government, from the highest to the lowest, are creatures of the law, and are bound to obey it." *United States v. Lee*, 106 U.S. 196, 220.'. *Burton v. United States,* 202 U.S. 344 [1906].

As stated by the highest court in Maryland in *Mayor of Baltimore v. Porter,* 18 Md. 284: "Where a limited tribunal goes beyond its jurisdiction, its decision amounts to nothing and does not create the necessity for an appeal."  *Miranda v. Arizona* 384 U.S. 436 [1966] `As Mr. Justice Brandeis once observed: "Decency, security and liberty alike demand that government officials shall be subjected to the same rules of conduct that are commands to the citizen. In a government of laws, existence of the government will be imperiled if it fails to observe the law scrupulously. Our Government is the potent, the omnipotent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious, If the Government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy. To declare that in the administration of the criminal law the end justifies the means ... would bring terrible retribution. Against that pernicious doctrine, this Court should resolutely set its face." *Olmstead v. United States*, 277 U.S. 438, 485 (1928)(dissenting opinion).' (page 479).

No man in this country is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All the officers of the government, from the highest to the lowest, are creatures of the law and are bound to obey it. It is the only supreme power in our system of

government, and every man who by accepting office participates in its functions is only the more strongly bound to submit to that supremacy, and to observe the limitations which it imposes upon the exercise of the authority which it gives. *United States v. Lee,* 106 U.S. 196, 220.

Thus there is no judicial immunity for acting criminally and in violation of the Constitution of Virginia, the Va. Code, and the Rules of the District of Columbia Court of Appeals, to injure, punish and stigmatize Rodriguez-father by a *void* order from the Virginia State Bar acting without any authority.

II. Venue is proper in the District of Columbia.

This Court procedures, that are "fair on their faces," but administered "with an evil eye or a heavy hand" are discriminatory and violates the equal protection clause of the fourteenth Amendment. *Yick Wo v. Hopkins,* 118 US 356, (1886).

Consequently, as above discussed given the record of criminal violations of 18 U.S.C. § 4, § 241, § 242, § 371, § 1001, and § 2104 in the District of Columbia the doctrine of judicial immunity does not apply, and venue is appropriate in this Court.

WHEREFORE, Rodriguez-father respectfully requests that the Judge Paul L. Friedman, reconsider and vacate his order of June 18, 2007, and set this case for trial.

Respectfully submitted,

_____/s/_____
Isidoro Rodriguez, Esq.

THE LAW OFFICES OF ISIDORO RODRIGUEZ

*United States Office:*
2304 Farrington Avenue
Alexandria, Virginia 22303-1520
Telephones: 703.317.0526; Fax: 703.960.0225
Cell: 703.470.1457

*South American Office:*
World Trade Center-Barranquilla
Calle 76 No. 54-11, Office 313
Barranquilla, Colombia, SA
Telephone: 011.5753.605288

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    :
ISIDORO RODRIGUEZ, ESQ.             :
                                    :
                Plaintiff,          : CASE NO. 07-CV-0975-PLF
                                    :
        v.                          :
                                    :
LEGAL TIMES, *et al.*,              :
                                    :
                Defendants.         :
_____:

### TEMPORARY RESTRAINING ORDER (PROPOSED)

Based on the Plaintiff Isidoro Rodriguez, Esq's ("Rodriguez-father"), complaint and motion For Reconsideration, Motion to Disqualify, and Judicial Complaint, it is order that the order of June 18, 2007, is vacated.

Furthermore, it is order that a trial on the merits be set on an expedited bases, and pursuant to 28 U.S.C. § 3. § 291(a), § 292(d) and § 455, , it is requested that a District judge be selected by Associate Justice Paul Stevens from outside of the D.C. and 4th Circuits to hear this action.

Dated this ____ day of June, 2007.

_____
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies a copy of the Motion for Reconsideration with Memorandum of Law, and Order, were sent on June 21, 2007, to opposing counsels by ECF system and U.S. mail, postage fully prepaid, to:

Editor in Chief
The Washington Post
1150 15th Street, N.W.
Washington, D.C. 20036

Respectfully submitted,

_____/s/_____
Isidoro Rodriguez, Esq.

THE LAW OFFICES OF ISIDORO RODRIGUEZ
ATTORNEYS AND COUNSELORS AT LAW

*Northern Virginia Office:*
7924 Peyton Forest Trail
Annandale, Virginia 22003
Telephone: 571.423.5066/telefax: 703.573.1571
Mobil: 703.470.1457
Email: isidoror@earthlink.net

*South American Office:*
World Trade Center
Calle 76 No. 54-11, Office 313
Barranquilla, Colombia
Telephone: 011.5753.605288
Telefax: 011.575.348001